Per Curiam.

In this taxpayer’s action to nullify the closing and discontinuance of a single interior block of Stanwix Street, which is five blocks long, extending from Bushwick Avenue to Flushing Avenue in Brooklyn, and for related relief, we agree *204 with the Appellate Division that the complaint as a pleading, read in the light of the exhibits, states a cause of action.
In a proper case, such an action is authorized (McCutcheon v. Terminal Sta. Comm., 217 N. Y. 127, 137, 141). Redress may only be had, however, when the official acts complained of are found to be corrupt, fraudulent, done in bad faith (McCutcheon v. Terminal Sta. Comm., supra, p. 148), or constitute a waste of .public property in the sense that they represent the use of Such property “for entirely illegal purposes ”, or where “ there is a total lack of power in defendants, under the law, to do the acts complained of” (Kaskel v. Impellitteri, 306 N. Y. 73, 79, cert. denied 347 U. S. 934; Kittinger v. Buffalo Traction Co., 160 N. Y. 377; Altschul v. Ludwig, 216 N. Y. 459; General Municipal Law, § 51).
It is elementary that the State’s power with respect to the discontinance of streets is plenary, and may be exercised directly by the Legislature or delegated by it to a subordinate governmental agency (Fearing v. Irwin, 55 N. Y. 486, 490; 25 Am. Jur., Highways, §' 118). Such power was granted by the Legislature to the City of New York in subdivision a of section E15-3.0 of the Administrative Code of the City of New York. This section authorizes the city to close a street when deemed “necessary in order to more effectually secure and preserve the regularity and uniformity of the streets therein, or where other public necessity requires the closing ”.
The complaint alleges that the closing of the portion of Stanwix Street, a busy and active street in use for over 90 years and an important link in the highway system of the city,, was not for the purpose of more effectually securing and preserving the regularity and uniformity of the streets of the City of New York nor for any other public necessity; that the agreements between the city and the abutting property owner to effectuate such closing were not entered into in good faith, and that the city’s action was unlawful and a waste of its property.
In support of its allegations, plaintiff points to the Journal of Proceedings of the Board of Estimate of the City of New York, which discloses that the board acted upon reports of its Chief Engineer and the Chairman of the Planning Commission. The Chief Engineer reported that the purpose of closing this *205 one interior block of Stanwix Street, which is 50 feet wide and concededly in use for over 90 years, was to permit the release of the city’s interest in the street to the abutting property owner ‘ ‘ that they may assure themselves of the exclusive use of that area for necessary parking and for access to their property ”, and recommended the institution of a closing proceeding “contingent” upon the board’s prior acceptance of agreements with the abutting owner. The Chairman of the Planning Commission reported that the closing of the street was provided for “in order that it may he released to” the abutting property owner “ for industrial expansion ” and inasmuch as said owner desires “ to consolidate its holdings ”.
These undisputed statements, appearing in the minutes of the Board of Estimate, and upon which the board acted, read with the complaint, would seem on their face to contradict the statements of the board that the closing was “in the public interest ” and that the street was “ not essential ”, and, without more, tend to bear out the allegations of the complaint to the effect that the city’s action was unlawful, and that the conditions for the exercise of the board’s power were not present in this case. As Judge Desmond stated in the Kashel case (306 N. Y. 73, 80, supra),
“ One can conceive of a hypothetical case where the physical conditions of an area might be such that it would be irrational and baseless to call it substandard or insanitary [in this case to say that the closing was “ in the public interest ” and that the street was “ not essential ”], in which case, prohahly, the conditions for the exercise of the power would not be present.”
While there is no objection to an owner acquiring title to abutting land in a street “Whenever the city shall have any right, title or interest ” (emphasis supplied) in a street that has been discontinued — indeed, section 383-2.0 of the Administrative Code so provides — a municipality is without power arbitrarily to vacate a street or a part thereof for the sole purpose of benefiting an abutting property owner, and without due regard for the enabling statute (see McCutcheon v. Terminal Sta. Comm., supra, pp. 142-144; 2 McQuillin, Municipal Corporations [3d ed], pp. 131-132; 25 Am. Jur., Highways, *206 § 120; 3 Dillon, Municipal Corporations [5th ed.], § .1160, p. 1838; Elliott, Municipal Corporations [2d ed.], p. 79).
McDonald v. Board of Street Comrs. of Boston (268 Mass. 288), cited in the dissenting opinion, clearly recognizes the exception to the rule that general power to discontinue a public street is vested in the city, for there it was expressly pointed out (p. 294): “So long as it [the board] acts honestly, without abuse of discretion, within the scope of the delegated power and governing principles of law, its decisions are not open to reexamination by the courts.” (Emphasis supplied.)
It may well be that the Board of Estimate acted within its powers in closing the portion of Stanwix Street affected; that upon a trial plaintiff will be unable to establish its cause of action; and the city may demonstrate that there is factual basis for its determination that the street was discontinued because, in the language of the statute, “public necessity requires the closing ’5 and that the closing was not for the sole benefit of the abutting property owner.. We are not now deciding the case upon the merits, but merely holding that the complaint, the allegations of which we must accept as true, read in the light of the exhibits, sufficiently states a prima facie cause of action.
The order appealed from should be affirmed, with costs to abide the event, and defendant given 20 days in which to answer the complaint; the question certified to us should be answered in the affirmative.