DONALD J. RILEY, Individually and on Behalf of All Other People Similarly Situated, et al., Respondents-Appellants, v COUNTY OF MONROE et al., Appellants-Respondents.

Fourth Department, December 17, 1976

*Harris, Beach & Wilcox (J. William Ernstrom* and *Paul J. Yesawich, III,* of counsel), for respondents-appellants.

*William J. Stevens (John D. Doyle* of counsel), for appellants-respondents.

MOULE, J. The questions presented on this appeal concern the sufficiency of plaintiffs' challenge to defendants' expenditure of county-wide real property tax revenues on the development and maintenance of a sanitary landfill for the exclusive use of the residents of the northeast quadrant of the County of Monroe.

The plaintiffs in this case include the Town of Greece, which is situated in the western portion of the county and Donald Riley, a resident of that town who commenced this action on behalf of himself and all other real property taxpayers similarly situated. The defendants are the County of Monroe, the County Manager, the County Comptroller, the County Legislators and High Acres Development Corporation.[1]

The facts of this case, as alleged in plaintiffs' complaint, are not disputed by defendants. On December 15, 1970 the Monroe County Legislators adopted Resolution 512 which authorized the issuance of serial bonds and capital notes to cover the cost of the acquisition of land and its original improvement for use as a site for a county landfill. The resolution further authorized the levy of a county-wide real property tax to pay the principal and interest on these obligations.

Thereafter, under authority of Resolution 380 of 1974 and with funds appropriated from the afore-mentioned tax revenues, the county exercised an option to purchase certain real property, located within the northeast quadrant of the county in the Town of Penfield, for use as a county landfill (Penfield landfill). This resolution also provided that, upon its completion, the Penfield landfill would "be operated only for those municipalities or portions thereof located within the original definition of the Northeast Quadrant" of the county.

Pursuant to authority granted under Resolution 380 of 1974, the County Manager solicited bids from private individu-

---

1. High Acres Development Corporation, however, is not a party to this appeal.

als and corporations to develop and operate this landfill and a contract was subsequently awarded to High Acres Development Corporation. The county authorized a fee of $5.50 per ton for all users of the landfill in order to finance operational expenses. The fees collected, however, have been insufficient to cover these expenses and the county has made deficit payments to High Acres Development Corporation out of the same county-wide real property tax revenues.

This action was commenced by plaintiffs by the service of a summons and complaint setting forth three causes of action. The first two, asserted solely on behalf of plaintiff Riley and similarly situated taxpayers pursuant to section 51 of the General Municipal Law, alleged that defendants' use of county-wide tax revenues to finance a landfill of limited geographic use constituted improper and illegal wasting of such funds. The third cause of action was asserted solely by the Town of Greece and alleged that despite repeated requests defendants had refused to appropriate similar tax funds to assist the Town of Greece in financing its own landfill operations although defendants had continued to subsidize the Penfield facilities. According to the town this decision constituted arbitrary and unconstitutional discrimination in violation of the town's rights under the Fourteenth Amendment to the United States Constitution as well as section 11 of article I of the State Constitution. Plaintiffs demanded judgment alternatively awarding damages in an amount to be determined by the court, declaring that this method of financing was illegal and enjoining defendants from continuing such funding.

Prior to service of their answer defendants moved to dismiss the complaint for failure to state a cause of action and submitted affidavits in support of this motion. Special Term subsequently denied defendants' motion to dismiss, granted plaintiffs' request to convert that motion into one for summary judgment, and then denied the motion for summary judgment. It also directed service of the answer and referred the matter to a trial part where it would be granted a preference.

Although defendants do not specifically contest the propriety of Special Term's decision converting their motion to dismiss to one for summary judgment, they nevertheless assert on this appeal that the complaint fails to state a cause of action. In analyzing this argument the first two causes of action, commenced pursuant to section 51 of the General

Municipal Law, must be considered separately from the third cause of action which alleged unconstitutional discrimination.

Section 51 of the General Municipal Law provides that a taxpayers' action may be commenced "to prevent any illegal official act * * * to prevent waste or injury * * * or to restore and make good, any property, funds or estate" of the county. "Redress may only be had, however, when the official acts complained of are found to be corrupt, fraudulent, done in bad faith (McCutcheon v. Terminal Sta. Comm. [217 N. Y. 127], supra, p. 148), or constitute a waste of public property in the sense that they represent the use of such property 'for entirely illegal purposes', or where 'there is a total lack of power in defendants, under the law, to do the acts complained of' (Kaskel v. Impellitteri, 306 N. Y. 73, 79, cert. denied 347 U. S. 934; Kittinger v. Buffalo Traction Co., 160 N. Y. 377; Altschul v. Ludwig, 216 N. Y. 459; General Municipal Law, § 51)." (Stahl Soap Corp. v City of New York, 5 NY2d 200, 204.) To allow otherwise would be to permit a taxpayer to reverse acts of legislative discretion; a result which would clearly be improper (Kaskel v Impellitteri, supra, p 78; 21 Carmody-Wait 2d, NY Prac, § 128:14).

Although plaintiff Riley's allegations of illegality are admittedly conclusory in nature and are not substantiated by direct reference to any statutory violation, a liberal reading of these allegations supports the conclusion that they do state valid causes of action. A similar result must also be reached with respect to the third cause of action asserted by the Town of Greece. This is not to say, however, that these allegations were sufficient to withstand a motion for summary judgment. In response to plaintiffs' bare assertions of waste and illegality with respect to the first two causes of action, defendants relied entirely upon section 226-b of the County Law as justification for their use of county-wide funds to finance the Penfield landfill.

Historically, the creation of sewage and solid waste disposal facilities has been governed by article 5-A of the County Law. That article empowers county governments to establish "special districts" to handle the individual needs of different portions of the county. The boundaries of such a district may include only that property which will be benefitted by the establishment of the district (County Law, § 256) and the financing of such facilities should be by assessment and levy upon those lots and parcels situated within the boundaries of

the district (County Law, § 270). Thus, had defendants in the instant case attempted to justify the establishment and financing of the Penfield landfill pursuant to article 5-A of the County Law, the use of county-wide tax revenues to finance an admittedly local facility would have been illegal.

However, in 1970 the State Legislature enacted section 226-b of the County Law which provides in pertinent part that "[t]he legislative body of any county may appropriate and expend such sums as it may deem proper to provide for the collection and disposition of solid wastes in such county and for that purpose may acquire, construct, operate and maintain solid waste disposal sites or plants, acquire the necessary lands therefor, and purchase, operate and maintain all necessary appliances appurtenant thereto". The section also authorizes the establishment of rate or fee schedules to cover the cost of such facilities.

This section, which does not fall within the scope of article 5-A of the County Law, was designed "to authorize county legislative bodies to provide for the collection and disposition of solid wastes *as a county function*" (Governor's Memorandum, McKinney's Sess Laws of NY, 1970, vol 2, p 3123— emphasis supplied). The Legislature thus intended to afford individual counties the option either of creating separate special districts pursuant to article 5-A of the County Law or of dealing with the problem on a county-wide level. To the extent that a county chooses to proceed according to section 226-b, the use of county-wide tax revenues to finance this "governmental function" is impliedly authorized by the language of that section.

With respect to the intentional restriction of the Penfield landfill to residents of the northeast quadrant, defendants asserted that this decision was based upon a rational county-wide plan for the disposition of solid waste. The immediate creation of that landfill was designed to avert a crisis situation within the northeast quadrant occasioned by the absence of any viable alternative to waste disposal within that section of the county. However, the limited capacity of that facility necessarily mandated its restricted use.

Plaintiffs did not contest the constitutionality of section 226-b of the County Law or the validity of defendants' rationale for restricted use in either their complaint or the affidavits submitted in support of summary judgment. Accordingly there appeared no triable issue of fact or law and summary judg-

ment should have been granted in defendants' favor on the first two causes of action.

A similar result must also be reached with respect to the third cause of action. In response to plaintiff Town of Greece's bare assertions of unconstitutional discrimination, defendants presented affidavits asserting that the Penfield landfill was part of an over-all rational legislative scheme for the effective disposition of solid waste on a county-wide level. In addition defendants presented letters in which the County Manager specifically requested plaintiffs to submit proposed sites for the creation of similar landfill facilities in the northwest portion of the county. Plaintiffs' failure to contest the allegations of rational legislative purpose again necessitates a finding that there is no triable issue of fact or law with respect to the third cause of action and summary judgment should have been granted in defendants' favor.

We have examined defendants' contention that the Town of Greece lacks standing to challenge the constitutionality of the instant use of county-wide tax revenues and find it to be without merit. In light of our decision, however, we do not reach defendants' argument that plaintiffs are not entitled to injunctive relief. Accordingly, the order insofar as it denied defendants' motion for summary judgment dismissing all three causes of action, directed service of the answer, referred the matter to a trial part and granted a preference should be reversed and defendants' motion for summary judgment dismissing the complaint granted; and insofar as it denied plaintiffs' motion for summary judgment and converted defendants' original motion to dismiss to a motion for summary judgment should be affirmed.

MARSH, P. J., MAHONEY, GOLDMAN and WITMER, JJ., concur.

Order unanimously modified in accordance with opinion by MOULE, J., and, as modified, affirmed, without costs.