*200 OPINION OF THE COURT
David O. Boehm, J.
On September 9,1980 the Rochester City Council passed an ordinance abandoning a portion of Ormond Street to the private use of Great Lakes Press Corporation and its affiliates, Great Lakes Properties and 439-465 Central Avenue, Inc. (collectively Great Lakes). Thereafter, St. Luke’s German Evangelical Lutheran Church (St. Luke’s) commenced this action against the city and Great Lakes to declare the ordinance unlawful and to enjoin its implementation. The defendants now move for summary judgment.
Ormond Street is a two-lane, two-way street which extends north and south, in the downtown industrial area of Rochester, for a distance of about four blocks. It intersects at its southern terminus with Cumberland Street, a one-way street limited to westbound traffic. One block north, Ormond Street is intersected by Central Avenue, another east-west street which, until recently, had been limited to eastbound traffic.
St. Luke’s provides religious and social programs to a county-wide congregation and, because it offers the Only German language Lutheran services in the western part of the State, it attracts attendance from outside the county as well. Since 1931 St. Luke’s has maintained church facilities and a parking lot on the corner parcel immediately north of Cumberland Street and east of Ormond Street.
The other Ormond Street property between Cumberland Street and Central Avenue is owned by Great Lakes, a large commercial printing establishment. Originally, Great Lakes was located upon the parcel east of Ormond Street, between St. Luke’s and Central Avenue. In 1979, however, Great Lakes expanded its operations to the entire west side of the block upon property purchased from the United States Postal Service. This was the first step in a plan of growth, designed in close consultation with city officials, which was intended to enable Great Lakes to enlarge its facilities and to expand its work force without having to relocate elsewhere.
Also contemplated by the plan (and a critical element of it, according to Great Lakes’ vice-president, Lawrence Glazer) was the eventual abandonment of Ormond Street *201 by the city to permit construction of a building linking Great Lakes’ existing facilities.
Although not disclosed how, St. Luke’s became aware of this plan and, by a letter from its attorney dated June 12, 1980, informed Great Lakes of its objection to the proposal, at least while Cumberland Street remained limited to one-way traffic. A few days thereafter, on June 16,1980, Great Lakes applied for an amendment of the city’s official map to abandon Ormond Street.[1]
The city director of planning and zoning reviewed the application and, after determining that the proposal did not require review under the State Environmental Quality Review Act (ECL art 8 [SEQRA]) and related regulations, referred it to the city planning commission for report, pursuant to section 29 of the General City Law. As required by local law, the planning commission held an information meeting on July 14, 1980, to which it invited representatives of Great Lakes as well as the owners of certain affected parcels on Ormond Street and Central Avenue. St. Luke’s, apparently because it was listed on the city tax roll under a Cumberland Street address, was not notified of this hearing.
On August 18, 1980 the planning commission recommended that Great Lakes’ application be granted in all respects. Thereafter, the matter was taken up at a city council meeting on September 9, 1980, for which notice was given, as required, by publication in the Rochester Democrat and Chronicle. No direct notice of the meeting was given to St. Luke’s or to its attorney, and no representative was present. Following the meeting, the city council granted the application (Ordinance No. 80-395).
Plaintiff thereafter commenced this action challenging the validity of the ordinance upon a number of grounds: the meeting was held and approval granted without appropriate notice; approval was granted without regard to the public interest, advancing only the private interests of Great Lakes; and the closing of Ormond Street left plaintiff *202 and its membership without suitable access to the church property. On February 3, 1981 plaintiff moved for a preliminary injunction, but Justice Robert H. Wagner denied that application in a written decision, dated February 24, 1981. These summary judgment motions followed.
Preliminarily, Great Lakes and the City of Rochester urge that Justice Wagner’s decision is dispositive of the issues raised in the complaint. However, that decision, which denied plaintiff’s motion for a preliminary injunction upon a number of grounds not applicable here, is not the law of the case with respect to the merits of the action itself (Walker Mem. Baptist Church v Saunders, 285 NY 462).
Plaintiff contends that it was not given notice of the procedural steps taken in the process of abandoning Ormond Street, e.g., the submission of Great Lakes’ application to amend the official map, the planning commission’s “informational hearing” and recommendation, and the city council hearing and determination. However, such failure is not legally sufficient to invalidate city council’s approval.
Section 29 of the General City Law provides the procedure by which a city council may change its official map. It requires that notice of a.public hearing be published once, five days in advance. Section 115-23 (subd [C], par [4], cl [b], subcl [4]) of the Rochester City Code also so provides. It is undisputed that this requirement was met.
Section 29 of the General City Law also provides that city council may not change the official map without first referring the matter to the planning commission “for report thereon,” but nothing in the statute requires the commission to conduct a public hearing before making its report. All that section 115-23 (subd [C], par [4], cl [b], subcl [2]) of the Rochester City Code requires is that “Upon receipt of a completed application * * * an information meeting shall be conducted by the Planning Commission.” The code distinguishes between “hearings” and “meetings” (see Rochester City Code, § 115-16, subd [E], pars [1], [3]), and while both are open to the public (Rochester City Code, § 115-16, subd [F], par [2]), there is no requirement that
*203 the public or any other private individuals be notified of a meeting (cf. Rochester City Code, § 115-138). Although it may be the commission’s practice to notify affected landowners of proposed changes to the official map, that practice is not required by law and the commission’s failure to notify the plaintiff, whether inadvertent or not, does not affect the city’s action (Ottinger v Arenal Realty Co., 257 NY 371, 380-383).[2]
Equally unavailing is plaintiff’s attack upon the general validity of Ordinance No. 80-395. Broadly, the complaint alleges that the abandonment of lower Ormond Street serves only the private interests of Great Lakes and is contrary to the general welfare, is beyond the authority of the city council, is unconstitutional, and was enacted in bad faith.[3]
Section 29 of the General City Law authorizes the city council to close existing streets “whenever and as often as it may deem it for the public interest” (see, also, General City Law, § 20, subd 7). With respect to this legislative authority, the Court of Appeals noted: “It is elementary that the State’s power with respect to the discontinuance of streets is plenary, and may be exercised directly by the Legislature or delegated by it to a subordinate governmental agency” (Stahl Soap Corp. v City of New York, 5 NY2d 200, 204). So long as the enabling statute is adhered to, the public’s easement over a particular roadway may be subordinated to other public purposes (McCutcheon v Terminal Sta. Comm, of City of Buffalo, 217 NY 127).
Plaintiff’s allegations that the ordinance closing a city street was motivated solely for private benefit were held to
*204 be sufficient to defeat a motion to dismiss the complaint in Stahl Soap Corp. v City of New York (supra). However, Stahl was decided in 1959, when the only statutory basis for permitting the closing of a street was derived from the Administrative Code of the City of New York, which limited that power to advance the uniformity of streets “or where other public necessity requires the closing” (Administrative Code, former § E15-3.0, subd a). Thereafter, broader authority was furnished by the State Legislature’s expansion of the definition of “public or municipal purposes” when it included as a public purpose “the promotion, creation, development or expansion of business, commerce, industry or job opportunities”. (General City Law, § 21, as amd by L 1976, ch 930). Similar authority is granted by section 5-32 of the Rochester City Charter.
Where, as here, a municipality has been given legislative authority to act in a particular area, its decisions in that area, if rational, may not be re-evaluated by the courts (Kaskel v Impellitteri, 306 NY 73). Even where the public advantage or justification for the legislation is fairly debatable, legislative judgment should control (Kravetz v Plenge, 84 AD2d 422).
It is clear that there was evidence before the city council from which it could conclude that the Ormond Street abandonment would promote the expansion of business and job opportunities, increase the city’s tax base and would, by permitting Great Lakes to relocate its loading facilities from Central Avenue, lead to an improvement of traffic conditions there. Moreover, plaintiff has produced no proof to rebut “the presumption that [this] legislative action has been devised and adopted on adequate information and under the influence of correct motives” (Matter of Asness v City of New York, 5 Misc 2d 779, 781, affd 4 AD2d 677; see, also, McCutcheon v Terminal Sta. Comm, of City of Buffalo, supra).
 St. Luke’s further asserts that the closing of lower Ormond Street is unlawful because it deprives plaintiff’s congregation of suitable access to the church facilities, arguing that because Ormond Street provided the chief *205 approach to the church parking lot, its closing will cause an irreparable decline in membership and patronage.[4] It is undisputed that St. Luke’s has access from Cumberland Street and, even if it did not, defendants argue, plaintiff’s sole remedy would be to seek compensation from the city. However, it is not necessary to decide whether plaintiff is limited to an award in condemnation for, at least with respect to the issues here presented, it is clear that it has not been deprived of suitable access.
It is also undisputed that St. Luke’s parking lot may still be freely entered and exited from the south at two curb-cuts on Cumberland Street. In fact, the Ormond Street entrance may still be attained from the south via Cumberland Street and the portion of the lower Ormond Street roadbed that abuts the plaintiff’s property.
Concededly, Cumberland Street is a one-way street limited to westbound traffic. The closing of Ormond Street requires parishioners approaching St. Luke’s from the north or west, who would formerly have been able to drive south on Ormond Street directly to the church, now to travel first east on Central Avenue to North Street, then south on North Street to Cumberland Street and then west to Ormond Street. But this involves travel of only an additional four tenths of a mile, and for those parishioners arriving from the south, as well as for some approaching from the east, no extra travel at all is required.
The fact that access may be more circuitous than it formerly was does not alone render it unsuitable (Reis v City of New York, 188 NY 58; Jones Beach Blvd. Estate v Moses, 268 NY 362; Tucci v State of New York, 28 AD2d 774, affd 29 NY2d 836). And while the question of whether the remaining access is suitable to a landowner’s purposes is ordinarily one of fact (Priestly v State of New York, 23 NY2d 152), it is apparent that any inconvenience of having to travel an additional four tenths of a mile, upon paved city streets, does not here render such access unsuitable.
*206 There is no vested right to the preservation of more than one means of access. Priestly v State of New York (supra), cited by plaintiff, is distinguishable not only upon its facts but also because the question there decided was whether the landowner had a compensable claim.
Plaintiff has presented no evidence upon which a finding of nonsuitability may be based other than its minister’s own conclusions and his statement that some members of the congregation “feel that the remaining access via North Street is unsafe.” However, nothing to substantiate such opinion has been produced (see Indig v Finkelstein, 23 NY2d 728). Defendant, City of Rochester, has submitted an affidavit from one of its investigators setting forth not only an opinion that the remaining entrances to St. Luke’s are suitable, but also the undisputed fact that they had been in previous use by members of the church. In the absence of any showing of unsuitability, plaintiff’s claim must fail in this respect as well (Nettleton Co. v State of New York, 11 AD2d 899; see, also, Matter of Smith v Gagliardi, 2 Misc 2d 1005, affd 2 AD2d 698; Randall v State of New York, 75 AD2d 906).
There being no factual issues requiring a trial, the motion of defendants for summary judgment is granted.

. The application also sought abandonment of a second street, unrelated to this litigation, and a change in applicable traffic regulations to permit two-way traffic on Central Avenue.

. Plaintiff cites no other authority entitling it to notice of the proceedings before the planning commission. Even if public notice of the commission’s information meeting was required by New York’s “Open Meetings Law” (see Public Officers Law, § 99; cf. Matter of Syracuse United Neighbors v City of Syracuse, 80 AD2d 984, app dsmd 55 NY2d 995), plaintiff has failed to meet its burden of showing good cause to void the commission’s recommendation (see Public Officers Law, § 102; Matter of New York Univ. v Whalen, 46 NY2d 734).

. The complaint also alleges that the abandonment was accomplished without regard to the State Environmental Quality Review Act (ECL art 8 [SEQRA]) but plaintiff has not advanced that argument on this or its prior motion. In any event, the affidavit of John Spoelhof, city director of planning and zoning, indicates that his department determined that the abandonment was not governed by SEQRA, and plaintiff has made no attempt to refute this conclusion.

. Although not argued, the complaint also makes the claim that the abandonment of Ormond Street unconstitutionally inhibits the rights of plaintiff’s congregants to freely practice their religion. Such rights are not violated, however, when a general law, secular in purpose, incidentally burdens one’s religious practice (Braunfeld v Brown, 366 US 599, semble).