■ In the Matter of E & J HOLDING CORP. et al., Petitioners, v ANTHONY NOTO et al., Respondents.—Proceeding pursuant to EDPL 207 to review a resolution of the Town Board of the Town of Babylon, dated July 22, 1986, which authorized the acquisition of easement rights over a 200-foot section of Gleam Street for the purpose of constructing a resource recovery facility.

Adjudged that the petition is granted, and the resolution is annulled, without costs or disbursements.

The petitioner, DeMatteo Salvage Co., Inc., operates a waste salvage business on property owned by the petitioner E & J Holding Corp. located on Gleam Street in the vicinity of the Town of Babylon's refuse disposal facility. The petitioners seek review of a resolution by the Babylon Town Board dated July 22, 1986, which authorized the acquisition of easement rights in a 200-foot section of Gleam Street. The Town Board determined that a closing of that section of Gleam Street was necessary in order to join parcels of town property and create a site for the construction of a new resource recovery facility.

The resolution adopting the Town Board's determination and findings and authorizing the acquisition must be annulled because the Town Board lacked the authority to discontinue this portion of Gleam Street (EDPL 207 [C] [2]).

Initially, the general grant of the power of eminent domain extended in Town Law § 64 (2) does not empower a town to acquire rights in property already devoted to another public use where the acquisition will interfere with or destroy the prior public use. In *New York Cent. & Hudson Riv. R. R. Co. v City of Buffalo* (200 NY 113, 117-118), the rule was set forth as follows: "Lands already taken by condemnation or acquired by purchase for public use should not be taken for another public use unless the reasons therefor are special, unusual and peculiar. For this reason it has been frequently held that where lands have once been taken or acquired for public use, they cannot be taken for another public use, at least if such other public use would interfere with or destroy the public use first acquired, unless the intention of the legislature that such lands should be so taken is shown by express terms or necessary implication".

Although the "prior public use" doctrine has been limited in cases where the condemnee's own nonhighway property is involved *(see, Matter of Board of Educ. v Pace Coll.,* 27 AD2d 87), in our view the rule is viable in a situation involving an otherwise nonauthorized closing of a public highway.

In particular, the "prior public use" doctrine is even more pertinent when the land sought to be condemned is a public highway. Property used for a highway cannot be appropriated for another public use, absent specific legislative authorization *(see,* 51 NY Jur 2d, Eminent Domain, § 50). "A general authorization to exercise the power of eminent domain will not ordinarily suffice for the condemnation of a public highway for

another totally inconsistent public use; a specific grant from the legislature or one of unmistakable intent is required in such a case" (26 Am Jur 2d, Eminent Domain, § 103, at 761).

In seeking to close a town road, the town was required to proceed in accordance with specific statutory authority. To accomplish this particular purpose it could not rely upon its general power of eminent domain. A similar situation occurred in 1968 when a town sought advice on the closing of a town highway to enlarge its watershed area. At that time, the Attorney-General stated: "The present statutory authority governing abandonment or discontinuance of a town or county highway or a substantial portion of a town or county highway set *[sic]* forth the conditions which must be met for such action. Absent existence of statutory conditions, or absent special legislation, there is no authority for the abandonment or discontinuance of a town or county highway even for implementation of a watershed program" (1968 Opns Atty Gen 93).

When a highway or street has been established, its continued existence is presumed *(see, Matter of Shawangunk Holdings v Superintendent of Highways of Town of Shawangunk,* 101 AD2d 905). Of course, this presumption can be overcome: "The maxim 'once a highway, always a highway,' is subject to the qualification that a highway once established continues until it ceases to be such by the action of the general public in no longer traveling upon it, or by action of the public authorities in formally closing it" (26 NY Jur, Highways, Streets, and Bridges, § 160, at 325).

"It is hornbook law that a State or municipality may close a street, if acting under proper statutory authority" *(Gengarelly v Glen Cove Urban Renewal Agency,* 69 AD2d 524, 526; *see also, Holmes v State of New York,* 279 App Div 489). The State's power to discontinue streets is plenary, and this power may be delegated by the Legislature to a subordinate governmental agency *(Stahl Soap Corp. v City of New York,* 5 NY2d 200, 204). It is imperative that statutes enabling such subordinate governmental agencies to discontinue roadways be adhered to when terminating the public's easement over such a roadway *(see, McCutcheon v Terminal Sta. Commn.,* 217 NY 127; *St. Luke's German Evangelical Lutheran Church v City of Rochester,* 115 Misc 2d 199).

The laws enabling such subordinate governmental units to close roadways differ and are found in various statutes. The City of New York's power to discontinue streets was granted by the Legislature in Administrative Code of the City of New

York former § E15-3.0 (a), now § 5-432 (a) *(Stahl Soap Corp. v City of New York, supra; Matter of City of New York [Gillen Place],* 304 NY 215). Villages may discontinue streets pursuant to Village Law § 6-612. Second class cities were granted this authority in Second Class Cities Law § 101. Cities governed by the General City Law are empowered to close streets pursuant to General City Law § 20 (7) and § 29 *(see, St. Luke's German Evangelical Lutheran Church v City of Rochester, supra).* A county's right to close a street is governed by Highway Law § 131-b. (For a general discussion of the various governing statutes, *see,* 26 NY Jur, Highways, Streets, and Bridges, §§ 162, 172.)

The laws governing a town's right to close or discontinue a highway are more restrictive. The Highway Law provides for the closing of town highways under very limited circumstances. Section 171 provides that a town superintendent may declare part of a highway "useless" or no longer necessary. Section 205 provides that a highway may be declared "abandoned" for lack of use. Section 207 provides for the closure of the end portion of a highway which is unnecessary. None of those sections is applicable to the situation at bar because Gleam Street is apparently still in active use *(see,* 26 NY Jur, Highways, Streets, and Bridges, § 164; *Dotsko v Littlejohn,* 31 AD2d 245; *Stupnicki v Southern N. Y. Fish & Game Assn.,* 41 Misc 2d 266, *affd* 19 AD2d 921).

The Town Board can only empower the Town Planning Board to approve "closing off or abandonment of streets, highways or public areas under the provisions of the town *and highway laws"* (Town Law § 274; emphasis supplied).

In sum, in order to close this portion of the highway to the public, the town was required to follow the specific statutory mandate of the Highway Law or obtain other clear and express legislative authorization. Since the town failed to do so, the resolution authorizing the acquisition of easement rights over the subject roadway, which is tantamount to its closing, must be annulled. Rubin, J. P., Lawrence, Kooper and Spatt, JJ., concur.