*805 OPINION OF THE COURT
Edward H. Lehner, J.
The issues raised herein are: (i) whether it is illegal, in a contract between the City of New York and a private firm for supervision and repair services in city-owned buildings, for the city to agree to indemnify the firm against claims arising as a result of the firm’s negligence, and (ii) whether plaintiffs, who are insurance brokers, have standing to challenge the validity of the contract in a taxpayer suit.
FACTS
The city, acting through the Department of Housing Preservation and Development (HPD), entered into a contract with Gotham Building Maintenance Corp. (Gotham) for maintenance and repair services in buildings acquired by the city through tax foreclosure. Presently HPD manages approximately 37,000 units of housing in 3,600 such buildings. Gotham employees are trained by HPD, which exercises supervision and control over wages and other conditions of their employment, including the right to discharge.
The contract currently requires Gotham to provide liability insurance, the cost of which is borne by the city through a pass-along provision. This has allegedly resulted in premium payments by the city of over $5 million annually. However, a clause in the contract, which is the subject of this controversy, provides that at HPD’s request Gotham shall terminate its liability insurance and the city will thereafter indemnify Gotham against claims for injury to persons or property occurring during the performance of the agreement, including claims resulting from negligent acts of Gotham. Intentional torts are excluded from the indemnity. The city estimates, from its experience in analyzing claims made against the insurer, that by implementing the right to terminate the insurance policies it will save $3 million annually, and it has stated that it intends to exercise that right.
CONTENTIONS OF THE PARTIES
Plaintiffs assert that the indemnification provision violates General Obligations Law §§ 5-322.1 and 5-323, which declare void and unenforceable certain types of agreements whereby a person exempts himself from liability for his negligence. Plaintiffs contend that, as taxpayers, they possess the right to enjoin the enforcement of said provision under section 123-b of *806 the State Finance Law, and (although not set forth in the pleadings) under section 51 of the General Municipal Law, asserting that payments made pursuant to the indemnification will result in the illegal and wasteful expenditure of city funds.
Defendants contend that plaintiffs lack standing to challenge the contract, but that even if standing exists, the indemnification provision does not violate the aforesaid General Obligations Law sections because the contract does not call for the type of work covered thereby. They further maintain that prohibiting this form of indemnification was not intended by the Legislature.
THE CLAIM OF STATUTORY VIOLATION
Section 5-322.1 of the General Obligations Law provides in part that: '.'A covenant, promise, agreement or understanding in, or in connection with or collateral to a contract or agreement relative to the construction, alteration, repair or maintenance of a building * * * purporting to indemnify or hold harmless the promisee against liability for damage arising out of bodily injury to persons or damage to property contributed to, caused by or resulting from the negligence of the promisee, his agents or employees, or indemnitee, whether such negligence be in whole or in part, is against public policy and is void and unenforceable; provided that this section shall not affect the validity of any insurance contract, workers’ compensation agreement or other agreement, issued by an admitted insurer”.
Section 5-323 of the General Obligations Law provides as follows: "Every covenant, agreement or understanding in or in connection with or collateral to any contract or agreement affecting real property made or entered into, whereby or whereunder a contractor exempts himself from liability for injuries to person or property caused by or resulting from the negligence of such contractor, his agent, servants or employees, as a result of work performed or services rendered in connection with the construction, maintenance and repair of real property or its appurtenances, shall be deemed to be void as against public policy and wholly unenforceable”.
Although the city argues that the "services provided by Gotham are essentially administrative in nature, consisting principally of payroll administration and labor management administration of HPD’s requirements of superintendents and *807 handymen”, it is clear that the Gotham contract does call for repair and maintenance by Gotham of real property, and hence comes within the ambit of both of the above-quoted sections of the General Obligations Law. (See, Board of Educ. v Valden Assocs., 46 NY2d 653 [1979].)
The effect of the indemnification provision is to make the city the liability insurer of Gotham. Although it has been held that parties to a construction contract may waive rights against others on condition that one party procure insurance covering all parties (Board of Educ. v Valden Assocs., supra), the city is not an insurance company.
Although there is some support for the plaintiffs’ contention that the principal purpose of the General Obligations Law sections is to encourage proper repair and maintenance of buildings (see, St. Vincent’s Med. Center v Vincent E. Iorio, Inc., 78 Misc 2d 908 [Sup Ct, Richmond County 1974]), the legislative memorandum accompanying the submission of the bill enacting General Obligations Law § 5-322.1 does not support that position. It indicates that the purpose of the enactment was to reduce construction costs of small contractors by avoiding economic coercion of them which occurs when they are required to indemnify for the negligence of others, and consequently required to pay higher insurance premiums. (See, Quevedo v City of New York, 56 NY2d 150 [1982] [which refers to such purpose].) Moreover, with respect to the incentive for a contractor to properly and safely perform its tasks, it would seem that there would be no difference whether it is covered by liability insurance, or indemnified by the City of New York.
Although the indemnification provision may appear to violate the literal wording of the statutes, there is nothing in the public policy behind their enactment that is violated by the provision. In this situation, the following rules of construction set forth in Abood v Hospital Ambulance Serv. (30 NY2d 295, 298 [1972]) are instructive: "While it is true that, whenever the language of a statute is clear and unambiguous, we are required under ordinary rules of construction to give effect to its plain meaning * * * the literal language of the statute, where it does not express the statute’s manifest intent and purpose, need not be adhered to. * * * Rather, '[t]o effect the intention of the legislature the words of a single provision may be enlarged or restrained in their meaning and operation, and language general in expression may be subjected to exceptions through implication.’ ”
*808 Employing such rules, the court finds that in this situation, where neither Gotham, nor any person who may be injured as a result of any negligence of a Gotham employee, would be adversely affected by the substitution of the city indemnification for liability insurance, and the city projects a cost savings to itself thereby, neither of the aforesaid sections of the General Obligations Law is violated by the subject contract provision.
Notwithstanding the foregoing finding, the court will proceed to examine the standing issue on the assumption that the General Obligations Law provisions are violated by the city’s indemnification.
STANDING
Section 123-b of the State Finance Law allows a taxpayer to bring suit to enjoin "a wrongful expenditure, misappropriation, misapplication, or any other illegal or unconstitutional disbursement of state funds or state property”. Since no State funds or property are involved herein, plaintiffs lack standing under this section. (See, Wein v Comptroller of State of N. Y., 46 NY2d 394, 398 [1979]; Board of Educ. v State of New York, 111 AD2d 505 [3d Dept 1985].)
Although not pleaded, both parties have argued the applicability of General Municipal Law § 51, which permits suit by designated taxpayers against: "All officers, agents, commissioners and other persons acting * * * on behalf of any * * * municipal corporation in this state * * * to prevent any illegal official act on the part of any such officers, agents, commissioners or other persons, or to prevent waste or injury to, or to restore and make good, any property, funds or estate of such * * * municipal corporation”.
The fact that the interest of the plaintiffs in instituting this suit is to avoid a loss of commissions on insurance premiums does not in itself deprive them of standing as such interest is not relevant to such issue. (See, Gage v City of New York, 110 App Div 403 [1st Dept 1905]; Orth-O-Vision v City of New York, 101 Misc 2d 987 [Sup Ct, NY County 1979].)
The claim here is that the illegal indemnification will result in a waste of funds by payment of claims that would otherwise be covered by insurance.
In interpreting General Municipal Law § 51, it has repeat *809 edly been held that mere illegality is insufficient to establish the right to institute a taxpayer suit. In Mesivta of Forest Hills Inst. v City of New York (58 NY2d 1014, 1016 [1983]), it was said that standing under General Municipal Law § 51 lies " 'only when the acts complained of are fraudulent, or a waste of public property in the sense that they represent a use of public property or funds for entirely illegal purposes’ ”. In Western N. Y. Water Co. v City of Buffalo (242 NY 202, 206-207 [1926]), it was held that: "Mere illegality is not enough. The very nature and purpose of a taxpayer action like the present one presume that there will be more than illegality in order to enable him to intervene. The basic theory of such an action is that the illegal action is in some way injurious to municipal and public interests and that if permitted to continue it will in some manner result in increased burdens upon and damages and disadvantages to the municipality and to the interests represented by it and so to those who are taxpayers.” (See also, Gaynor v Rockefeller, 15 NY2d 120 [1965]; Stahl Soap Corp. v City of New York, 5 NY2d 200 [1959]; Kaskel v Impellitteri, 306 NY 73 [1953].)
Here the city projection that the indemnification substitution for insurance will save it $3 million annually is, like most financial projections, subject to many variables, and the amount of savings or loss will be dependent on the number of future accidents in and about the subject buildings, and the nature thereof. Plaintiffs have set forth no facts that would in any manner indicate that this projection is not made in good faith.
Considering the foregoing, it cannot be said that the indemnity substitution constitutes a fraudulent or wasteful use of public funds. The city has made a legitimate business decision, and plaintiffs are not entitled to have the court intervene to review the wisdom of such determination.
CONCLUSION
The motion of the plaintiffs is denied, and the cross motion of defendants for summary judgment declaring that the subject indemnification provision is not illegal and to otherwise dismiss the complaint is granted.