[891 NYS2d 133]

In the Matter of WILLIAM BAKER et al., Appellants, v VILLAGE OF ELMSFORD et al., Respondents.

Second Department, December 8, 2009

APPEARANCES OF COUNSEL

*Bleakley Platt & Schmidt, LLP*, White Plains (*William P. Harrington* and *Kenneth C. Brown* of counsel), for appellants.

*Wormser, Kiely, Galef & Jacobs LLP*, White Plains (*Daniel Pozin* and *Karen L. Wagner* of counsel), for Village of Elmsford and others, respondents.

*Santangelo Randazzo & Mangone LLP*, Hawthorne (*James A. Randazzo* of counsel), for Brookfield Automotive Exporting Corp. and another, respondents.

**OPINION OF THE COURT**

DILLON, J.P.

By contract dated December 6, 2005, the respondent Village

of Elmsford agreed to purchase from the respondent Brookfield Automotive Exporting Corp. (hereinafter Brookfield) a 30,060-square-foot parcel of property for the sum of $1,550,000. The property was located on Vreeland Avenue, was identified in the contract by section, block, and lot number, and was intended by the Village to be used as a service and storage area for its Department of Public Works. Paragraph (4) of a rider to the contract conditioned the contract upon the Village demapping a 21,010-square-foot portion of Vreeland Avenue and a 632$^1$/$_2$-square-foot portion of River Street, and transferring title to the demapped property to Brookfield in exchange for a credit to the Village in the sum of $200,000 against the contract price at closing.

The petitioners, William Baker and Ronald Baker (hereinafter together the Bakers), own properties located at 12 River Street* and 17 Hayes Street, contiguous to the streets that the Village intended to demap. The premises at 12 River Street is a 7,600-square-foot structure that houses two tenants, the New York State Department of Motor Vehicles (hereinafter the DMV) and an automotive transmission repair shop. The premises at 17 Hayes Street is also a 7,600-square-foot structure and is leased to a tree service company that uses the property's driveway for the ingress and egress of trucks and equipment. The Bakers allege that Vreeland Avenue has always been open and accessible to public traffic and for parking, and that both Vreeland Avenue and River Street have been specifically used for vehicular access and parking by their buildings' tenants and their employees.

Vreeland Avenue and River Street have been mapped by the Village for almost 80 years, as evidenced by zoning maps filed in 1930 and 1966. In 1988, Brookfield was required to make improvements to Vreeland Avenue as a condition of obtaining a building permit, and in 1990 the Bakers were required to repave a portion of River Avenue as a condition of obtaining a certificate of occupancy for one of their buildings.

The area where the subject portions of Vreeland Avenue and River Street are located is near the Saw Mill River and is subject to severe and periodic flooding. Indeed, the Bakers claim that the area is within a flood zone designated by the Federal Emergency Management Agency (hereinafter FEMA), and that flood

---

* Portions of the record and briefs alternatively refer to the premises as 10 River Street and 12 River Street. We identify the premises as 12 River Street as that is the address set forth in the Bakers' petition.

waters are routinely two-to-three-feet high and can sometimes rise to four feet. Photographs of actual flood conditions are contained in the record.

By notice of the Board of Trustees of the Village of Elmsford (hereinafter the Board) dated December 8, 2005, the Village scheduled a public hearing on the proposed demapping of portions of Vreeland Avenue and River Street. The public hearing was held on January 9, 2006. The Village prepared short environmental assessment forms (hereinafter EAFs) for each road pursuant to the State Environmental Quality Review Act (ECL art 8; hereinafter SEQRA), indicating, inter alia, that the proposed demapping of Vreeland Avenue and River Street would not affect the area's air quality, surface and ground water, noise levels, traffic patterns, waste disposal, erosion, drainage, or flooding problems. At the hearing, the Village heard from a variety of municipal officials, including the assessor, via written correspondence, that the demapping would not measurably impact the fair market values of nearby properties; the Village's fire chief, water foreman, and police chief that the demapping would not affect fire, water, and law enforcement services; the Village's engineer, building inspector, and highway superintendent that the roads in question were never improved or maintained by the municipality; and the deputy mayor regarding the Village's plans to secure a proper location for a highway garage.

Edward Baker also spoke at the public hearing. He advised that during episodes of flooding, Vreeland Avenue and River Street are used as an egress to Routes 9A and 119. A demapping of the roads, he argued, would landlock property owners and tenants and "negate access that ha[d] been used continuously." Baker's counsel took issue with the portion of the EAFs and the representations of municipal officials that the roads had never been improved or traveled. Counsel noted that improvements had been made to the roads as conditions of an earlier building permit and a certificate of occupancy, which were then further described by Edward Baker. Additionally, a revised subdivision map dated December 31, 2005, which was valid on the date of the public hearing, contains notations that the streets at issue are "traveled and paved."

At the conclusion of the hearing, the Board adopted two resolutions that discontinued identified portions of Vreeland Avenue and River Street, respectively, pursuant to Village Law § 6-612.

By notice of petition and verified petition filed February 3, 2006, the Bakers sought, pursuant to CPLR article 78, review of the resolutions that demapped the relevant portions of Vreeland Avenue and River Street. The Bakers alleged, among other things, that the roadways were not useless, and that the Village failed to take the requisite "hard look" at the environmental impact of the discontinuances as required by SEQRA. The Bakers argued that the demapped roads were used during flooding, which occurred at least six times per year, as the sole means of ingress to and egress from the area when an alternate route via Havens Avenue is flooded. The Bakers also sought, inter alia, a judgment declaring the resolutions null and void.

Brookfield and the Village served verified answers dated June 27, 2006 and June 30, 2006, respectively, which denied the material allegations set forth in the petition and interposed various affirmative defenses. The municipal respondents submitted to the Supreme Court extensive materials by which the Village opposed the requested relief. A reply and surreply also were submitted by the parties.

In the judgment appealed from, the Supreme Court, upon marshaling the facts, held, inter alia, that the Village acted within its authority, had a rational basis for discontinuing portions of Vreeland Avenue and River Street, and had complied with the "hard look" requirements of SEQRA.

For the reasons set forth below, we reverse.

Municipalities hold the fee of streets in trust for the general public. The trust is publicum juris, meaning, for the whole people of the state (*see Bass Bldg. Corp. v Village of Pomona*, 142 AD2d 657, 658 [1988]). Once a street is established, its continued existence is presumed (*see Matter of E & J Holding Corp. v Noto*, 126 AD2d 641, 643 [1987]; *Matter of Shawangunk Holdings v Superintendent of Highways of Town of Shawangunk*, 101 AD2d 905, 907 [1984]; *Matter of Flacke v Strack*, 98 AD2d 881, 882 [1983]; *Hewitt v Town of Scipio*, 32 AD2d 734 [1969], *affd* 26 NY2d 934 [1970]). Municipalities may close a street only if acting under proper statutory authority in doing so (*see Matter of E & J Holding Corp. v Noto*, 126 AD2d at 643; *Gengarelly v Glen Cove Urban Renewal Agency*, 69 AD2d 524, 526 [1979]).

Authority for discontinuing streets is found in Highway Law § 131-b (1) for counties, General City Law § 20 (7) and § 29 for cities, Second Class Cities Law § 101 for second class cities, Administrative Code of the City of New York § 5-432 (a) for the

City of New York, Highway Law § 171 (2) and § 205 (1) for towns, and Village Law §§ 6-612 and 6-614 for villages. These various statutes were enacted at different times and do not reflect uniform standards or procedures. A county may discontinue a highway, for instance, by merely determining that the "interest of the county will be promoted thereby" (Highway Law § 131-b [1]), whereas a town may discontinue a highway only if it has become "useless" (Highway Law § 171 [2]) or "abandoned" (Highway Law § 205 [1]).

For villages, as applicable here, Village Law § 6-612 provides very simply and succinctly that: "[t]he board of trustees may by resolution provide for laying out, altering, widening, narrowing, discontinuing or accepting the dedication of a street in the village." Village Law § 6-614 requires notice to the public of any resolution under consideration for discontinuing a street. While Village Law §§ 6-612 and 6-614 set forth no legal standard for determining whether a village may discontinue a street, the parties agree, and other legal authority provides, that the discontinuance of a village street requires a finding that the street has become "useless as a right-of-way to the general public" (*Bass Bldg. Corp. v Village of Pomona*, 142 AD2d at 659; *see* 1964 Ops St Comp No. 64-808; 64 NY Jur 2d, Highways, Streets, and Bridges § 198, at 620).

The "useless" test has been strictly construed, perhaps given the applicable publicum juris trust, so that generally, if a street affords a means of ingress or egress and is used as such to any degree more than a mere token use, the street is not deemed to be useless (*see* 1980 Ops St Comp No. 80-156). "Useless" in the vernacular is defined as "having or being of no use," "producing no good end," and "answering no desired purpose" (*see* Webster's Third New International Dictionary 2524 [2002]). Any question regarding whether a street is no longer a useful thoroughfare must be determined, in the first instance, by the village board on notice (*see* Village Law § 6-614; 1980 Ops St Comp No. 80-534; 12-125 Warren's Weed, New York Real Property § 125.20 [2009]).

This Court's decision in *Bass Bldg. Corp. v Village of Pomona* (142 AD2d 657 [1988]) is instructive. There, Bass Building Corp. (hereinafter Bass) owned a tract of land that was under development in the Village of Wesley Hills, contiguous to the Village of Pomona. A single road extended from within the Village of Pomona into the Village of Wesley Hills, where it intersected Bass's land at the border. The Board of Trustees of the Village

of Pomona passed a resolution, after a hearing, that the roadway on its side of the border be discontinued as it was useless to Pomona. In the action that followed, this Court held that Bass was entitled to a preliminary injunction since, inter alia, the street on the Pomona side of the border provided a means of ingress to and egress from the Bass tract on the Wesley Hills side of the border (*see Bass Bldg. Corp. v Village of Pomona,* 142 AD2d at 658-659). It was in this context that this Court held that the "useless" test governs the discontinuance of village streets under Village Law §§ 6-612 and 6-614.

The standard of review that we must apply to the Village's resolutions is the "arbitrary and capricious" standard of CPLR 7803 (3) rather than the "substantial evidence" standard of CPLR 7803 (4), since the January 9, 2006 public hearing was informal in nature and without sworn testimony or the taking of formal evidence (*see Matter of Pell v Board of Educ. of Union Free School Dist. No. 1 of Towns of Scarsdale & Mamaroneck, Westchester County,* 34 NY2d 222, 231 [1974]; *Matter of Halperin v City of New Rochelle,* 24 AD3d 768, 770 [2005]; *Matter of Wal-Mart Stores v Planning Bd. of Town of N. Elba,* 238 AD2d 93, 96 [1998]; *Matter of Bravata's Carting v Town of Huntington,* 120 AD2d 521, 522 [1986]). Specifically, we must determine whether the Village's resolutions were affected by an error of law, or were arbitrary and capricious or an abuse of discretion, or were irrational (*see* CPLR 7803 [3]; *Matter of Moy v Board of Town Trustees of Town of Southold,* 61 AD3d 763 [2009]; *Matter of Zupa v Board of Trustees of Town of Southold,* 54 AD3d 957 [2008]; *Matter of Halperin v City of New Rochelle,* 24 AD3d at 770).

Here, the Village compiled significant information at the public hearing that the discontinuance of portions of Vreeland Avenue and River Street would have no negative effect on the area's market values, fire protection, law enforcement, water, sanitation, and other environmental factors. On this basis, the Village passed resolutions that the relevant portions of Vreeland Avenue and River Street "no longer serve[ ] any public use and therefore [are] no longer needed as a thoroughfare for public vehicular or pedestrian traffic or access," i.e., the streets had become useless. However, in passing its resolutions, the Village wholly ignored the input of Edward Baker and his counsel that the streets had been improved in 1988 and 1990 at the insistence of the Village as conditions of a building permit and a certificate of occupancy, and that the streets were actively used by

area building owners, tenants, and employees at various times each year as a means of ingress and egress during recurrent flooding.

We find that the Village's determination, that portions of Vreeland Avenue and River Street had become useless as a thoroughfare, was arbitrary and irrational given the undisputed assertion that the streets had undergone improvements at the insistence of the Village and were repeatedly used for vehicular travel during times of periodic floods. The roads are not, in fact, useless, but serve a highly useful, though perhaps sporadic, emergent purpose (*accord Bass Bldg. Corp. v Village of Pomona*, 142 AD2d at 658). While the Supreme Court properly noted the deference that should be accorded to local boards in making determinations concerning land use in their communities (*see Matter of Pecoraro v Board of Appeals of Town of Hempstead*, 2 NY3d 608, 613 [2004]; *Matter of Brancato v Zoning Bd. of Appeals of City of Yonkers, N.Y.*, 30 AD3d 515 [2006]; *Matter of North Shore F.C.P., Inc. v Mammina*, 22 AD3d 759, 759-760 [2005]; *Matter of Wasserman v Planning Bd. of Vil. of Dobbs Ferry*, 281 AD2d 635 [2001]), it failed to reconcile the utility of the streets during periodic flooding with the "useless" test employed by the Village in the resolutions under review.

The Village argues, based on the affidavit of its engineer, that the Bakers have no need for the discontinued portions of Vreeland Avenue or River Street, even in times of flooding, as a paved driveway through the premises at 17 Hayes Street connects the Bakers' properties to Hayes Street. The Village's argument begs the issue. Even if access from a private driveway is possible, the fact remains that the demapped portions of Vreeland Avenue and River Street had been used, and remain useful, as a thoroughfare to members of the public. The private driveway of 17 Hayes Street is not a public means of access to or from the Bakers' premises at 12 River Street, rendering the Village's argument illusory. Indeed, if the premises at 17 Hayes Street were to be sold and its new owner were to deny through access to or from River Street, the discontinuance of Vreeland Avenue and the flooding of the alternative Hayes Street route would choke off all ingress to or egress from 12 River Street. Cases relied upon by the Village that a public road may be discontinued when there is an alternative means of access are distinguishable, as the alternatives in those case consisted of, or directly accessed, public rights-of-way rather than private driveways (*see Reis v City of New York*, 113 App Div 464, 466-467 [1906], *affd*

188 NY 58 [1907]; *Merritt Manor Estates v Village of Elmsford*, 30 Misc 2d 935, 941 [1961]; *Matter of Benedict v Roberts*, 30 Misc 2d 650, 652 [1961], *affd* 14 AD2d 977 [1961]; *Matter of Smith v Gagliardi*, 2 Misc 2d 1005, 1007-1008 [1955], *affd* 2 AD2d 698 [1956]). Here, the Village's suggestion that the owners and tenants of 12 River Street, including the DMV and a transmission repair shop, access Hayes Street via a private driveway through 17 Hayes Street when Havens Avenue is flooded, is untenable when a public alternative is already available and useful via Vreeland Avenue.

■ We also agree with the Bakers that the Village did not comply with SEQRA. The purpose of SEQRA is to inject environmental considerations directly into governmental decision-making (*see Akpan v Koch*, 75 NY2d 561, 569 [1990]; *Matter of Coca-Cola Bottling Co. of N.Y. v Board of Estimate of City of N.Y.*, 72 NY2d 674, 679 [1988]; *Matter of Barrett v Dutchess County Legislature*, 38 AD3d 651, 655 [2007]). As stated by the Court of Appeals:

> "A court's authority to examine a SEQRA review conducted by an entity that was required to do so is limited to reviewing whether the determination was made in violation of lawful procedure, was affected by an error of law or was arbitrary and capricious or an abuse of discretion. The relevant question before the court is 'whether the agency identified the relevant areas of environmental concern, took a "hard look" at them, and made a "reasoned elaboration" of the basis for its determination.' " (*Matter of Gernatt Asphalt Prods. v Town of Sardinia*, 87 NY2d 668, 688 [1996], quoting *Matter of Jackson v New York State Urban Dev. Corp.*, 67 NY2d 400, 417 [1986]; *see Matter of Chemical Specialties Mfrs. Assn. v Jorling*, 85 NY2d 382, 396-397 [1995]; *Chinese Staff & Workers Assn. v City of New York*, 68 NY2d 359, 363-364 [1986]; *Matter of Holmes v Brookhaven Town Planning Bd.*, 137 AD2d 601, 603 [1988].)

Literal compliance with both the letter and spirit of SEQRA, and not mere substantial compliance, is required (*see Matter of Halperin v City of New Rochelle*, 24 AD3d at 776; *Matter of Coalition for Future of Stony Brook Vil. v Reilly*, 299 AD2d 481, 483 [2002]; *Matter of Golten Mar. Co. v New York State Dept. of Envtl. Conservation*, 193 AD2d 742, 744 [1993]; *Matter of Group*

*For S. Fork v Wines*, 190 AD2d 794, 796 [1993]), though the manner in which an agency identifies, considers, and analyzes alternatives is subject to a rule of reason (*see Matter of Town of Dryden v Tompkins County Bd. of Representatives*, 78 NY2d 331, 333-334 [1991]; *Akpan v Koch*, 75 NY2d at 570; *Matter of WEOK Broadcasting Corp. v Planning Bd. of Town of Lloyd*, 79 NY2d 373, 382 [1992]; *Matter of Halperin v City of New Rochelle*, 24 AD3d at 776-777).

Since the discontinuance of the public road was considered an unlisted action, short form EAFs were prepared (*see Matter of Tehan v Scrivani*, 97 AD2d 769, 771 [1983]). The degree of detail expected of negative declarations contained in EAFs will vary with the nature of the proposal (*see Matter of Har Enters. v Town of Brookhaven*, 74 NY2d 524, 530 [1989]; *Matter of Cannon v Murphy*, 196 AD2d 498, 501 [1993]). The EAFs stated that the road discontinuances would not cause any adverse effects associated with, inter alia, existing traffic patterns or flooding. The "Reasons Supporting This Determination" sections of the negative declaration pages of the EAFs contained an attachment that merely restated that there would be no adverse effects related to traffic or flooding. The central basis for questioning the discontinuance of the streets, relating to their use during times of periodic flooding, was apparently not considered when the short form EAFs were prepared. The negative declarations were merely conclusory (*see Matter of Fleck v Town of Colden*, 16 AD3d 1052, 1054 [2005]; *Matter of Farrington Close Condominium Bd. of Mgrs. v Incorporated Vil. of Southampton*, 205 AD2d 623, 625-626 [1994]). Under these circumstances, the Village's look at the potential adverse effect of the discontinuances upon local traffic and safety does not represent the "hard look" with "reasoned elaboration" mandated by SEQRA (*Matter of Gernatt Asphalt Prods. v Town of Sardinia*, 87 NY2d at 688; *see Matter of Avy v Town of Amenia*, 27 AD3d 557, 558-559 [2006]; *Matter of Fleck v Town of Colden*, 16 AD3d at 1054).

In light of the foregoing, the cause of action for a declaratory judgment annulling the resolutions should have been dismissed as unnecessary (*see Matter of Kogel v Zoning Bd. of Appeals of Town of Huntington*, 58 AD3d 630 [2009]).

The parties' remaining contentions either are without merit or need not be addressed in light of our determination.

Accordingly, the judgment is reversed insofar as appealed from, on the law, the petition is granted, the resolutions dated January 9, 2006 are annulled, and the cause of action for a declaratory judgment is dismissed as unnecessary.

ANGIOLILLO, LEVENTHAL and CHAMBERS, JJ., concur.

Ordered that the judgment is reversed insofar as appealed from, on the law, with one bill of costs payable by the respondents appearing separately and filing separate briefs, the petition is granted, the resolutions dated January 9, 2006 are annulled, and the cause of action for a declaratory judgment is dismissed as unnecessary.