OPINION OF THE COURT
Angiolillo, J.P.
More than a decade ago, homeowners William A. Zutt and Diane Zutt (hereinafter together the Zutts) commenced the first in a series of actions and proceedings to prevent the State of New York from draining stormwater over their property. The Zutts have prevailed in all previous litigation, collecting damages for trespass and obtaining injunctive relief. Nevertheless, in 2010, the State invoked its powers of eminent domain and sought to condemn a portion of the Zutts’ property for a drainage easement. The Zutts commenced this proceeding pursuant to CPLR article 78 to review, and ultimately to enjoin, the condemnation, and action for declaratory and permanent injunc *89 tive relief, and the Supreme Court, in effect, granted the petition and permanent injunctive relief, finding, among other things, that the State had acted in bad faith. In this fourth appearance in our Court concerning the underlying dispute, we agree with the Supreme Court, and take this opportunity to distinguish the concepts of bad faith and lack of a proper public purpose in the context of condemnation proceedings.
Factual Background and Previous Litigation
In April 2000 the Zutts purchased their home in an environmentally sensitive, historic area on New York State Route 9D in Garrison, a New York scenic byway. In September 2000 their property was damaged by stormwater discharged from a culvert under Route 9D; the water had been directed into the culvert by a drainage system of catch basins and pipes. After consulting an engineer, the Zutts repaired the damage and installed a gabion retaining wall on their property.
In June 2001 the Zutts’ property was again damaged by stormwater discharged from the culvert. The Zutts contacted the New York State Department of Transportation (hereinafter the DOT), which sent an engineer to assess the damage. In November 2001 the DOT informed the Zutts that the State would not undertake remedial or corrective measures.
Consequently, in January 2002, the Zutts filed a claim against the State in the Court of Claims to recover damages for trespass and nuisance. In defense, the State asserted that it had a prescriptive easement based upon its installation in 1984 of the drainage system of catch basins and underground pipes, and the existence of the culvert under Route 9D since, at the latest, 1928.
In a decision after trial dated July 27, 2006 (hereinafter Zutt I), the Court of Claims (19 Misc 3d 1131[A], 2006 NY Slip Op 52611[U] [2006, Scuccimarra, J.]) explained that the State failed to establish a prescriptive easement by clear and convincing evidence, and that stormwater drainage over the Zutts’ property constituted a continuing trespass. The Court of Claims noted that “the State [had] altered drainage conditions by the use of pipes and catch basins, thus increasing the velocity of any water collected, and increasing the erosion potential of any water discharged,” while failing to improve the culvert, abate the flow, maintain the channel emanating from the culvert, or control potential damage (2006 NY Slip Op 52611[U], *13). “[W]ithout maintenance efforts, the channel became deeper and wider, and *90 will continue to widen” (id.). The Court of Claims found the State “solely responsible” for the damage to the Zutts’ property resulting from the storm in June 2001, and subsequently entered judgment in favor of the Zutts in the amount of $3,000. The State appealed to this Court, and we affirmed the judgment entered upon the decision in Zutt I (see Zutt v State of New York, 50 AD3d 1133 [2008]).
Meanwhile, after Zutt I, but prior to the entry of the final judgment, the Zutts wrote to the State, requesting that it take measures to ameliorate the continuing trespass in order to avoid further litigation. When the State failed to respond, the Zutts commenced an action in the Supreme Court, Putnam County, seeking injunctive relief and damages for inverse condemnation. On January 31, 2007, upon granting the State’s pre-answer motion, the Supreme Court (O’Rourke, J.) dismissed the complaint for lack of subject matter jurisdiction (hereinafter Zutt II). The Zutts appealed from so much of Zutt II as dismissed the cause of action for permanent injunctive relief, and we reversed, reinstating that cause of action (see Zutt v State of New York, 50 AD3d 1131 [2008]).
Thereafter, the State answered the complaint, asserting once again, among other things, the defense of prescriptive easement, a defense rejected by the Court of Claims and this Court in Zutt I. The Zutts moved for summary judgment, and the State opposed the motion. The parties each submitted affidavits of their respective experts. The Zutts’ expert, civil engineer Todd W Atkinson, submitted a proposal for the State to run additional subsurface piping for approximately 250 feet within its right-of-way on Route 9D to divert the stormwater to a natural stream north of the Zutts’ property. In an order entered October 20, 2009 (hereinafter Zutt III), the Supreme Court (O’Rourke, J.) granted the Zutts’ motion for summary judgment on the cause of action for a permanent injunction, and directed the State to implement Atkinson’s stormwater diversion plan. The Supreme Court noted that, in Zutt I, the issues of the State’s continuing trespass and lack of a prescriptive easement had been finally determined in favor of the Zutts; the State had “known of the condition and resulting damage to [the Zutts’] property for many years and had done nothing to prevent the continuing trespass.”
The State appealed from Zutt III, thus invoking the automatic stay provision of CPLR 5519 (a) (1). During the pendency of the appeal, the Zutts filed another claim in the Court of Claims to *91 recover damages resulting from a storm that occurred on July 17, 2009. The Zutts moved for summary judgment on the issue of liability, and the State cross-moved for leave to amend its answer to include, once again, the defense of prescriptive easement. In an order dated March 3, 2010 (hereinafter Zutt IV), the Court of Claims characterized the State’s assertion of a prescriptive easement as “puzzling” in light of Zutt I, decided nearly four years earlier, which finally determined that issue against it. The Court of Claims granted the Zutts’ motion and denied the State’s cross motion, finding that, as the State conceded, the State had done nothing to stop the continuing trespass determined in Zutt I, and nothing to comply with the permanent injunction granted in Zutt III.
On May 4, 2010, two months after Zutt IV, more than six months after Zutt III, and while the appeal from Zutt III was pending, the State issued a notice of condemnation to the Zutts for a “permanent easement” over their property. The notice stated that the DOT
“ha[d] determined that reconstruction and reconfiguration of the drainage ditch over [the Zutts’] property, along basically the same drainage course these storm waters have flowed for decades, remains the safest, most efficient, most cost-effective, and least disruptive means to address the State’s ongoing Rt. 9D safety and maintenance responsibilities to the traveling public.”
The proposed permanent easement is “irregular in shape,” “[l]ong and narrow,” with “various widths,” and consists of a total area measuring approximately 15,411 square feet. With the notice, the State enclosed a copy of its proposed Appropriations Map No. 36R-1, and a copy of the preliminary design of the drainage course. The Zutts were offered compensation in the amount of $87,900 for damages to “land improvements including: two foot bridges, stone pathways, nine trees and an 18” corrugated metal pipe.”
The State had started planning for the condemnation prior to the injunction issued in Zutt III. On September 30, 2009, the DOT approved its initial project proposal for the condemnation, which recited that the project was undertaken in response to Zutt I to “rectify erosion and . . . trespass” on the Zutts’ property and to address “other issues as per lawsuit settlement.” The proposal stated that a public hearing was not necessary, and that the only “planned public involvement” was “coordina *92 tion with [the Zutts].” With respect to the State Environmental Quality Review Act (ECL art 8 [hereinafter SEQRA]), the proposal stated that the project was “exempt” from any environmental review whatsoever under SEQRA and, thus, not deemed even to be a Type II action, which presumptively does not require the preparation of an environmental impact statement (hereinafter EIS), let alone a Type I action, which presumptively requires the preparation of an EIS, or an unlisted action, to which no presumption attaches. However, the proposal went on to identify several “special circumstances” affecting the project, including its location in both a coastal zone and a scenic area of statewide significance along a scenic byway, the need for cultural resource screening, and the presence of a “class B” stream (see 6 NYCRR 701.7) and farmland of statewide importance within the project limits.
Thereafter, on December 1, 2009, and subsequent to the injunction issued in Zutt III, the DOT completed a design approval for a “temporary easement” over the Zutts’ property, and, on February 12, 2010, completed a revised design approval for a “permanent easement.” Internal DOT memoranda bearing those dates stated that the condemnation was “being progressed [sic] as an exempt project” under SEQRA, that the easement was “needed to allow for the continued flow of storm-water across the [Zutts’] property,” and that the easement was “being requested by the Office of Legal Affairs to satisfy the requirements of’ Zutt III.
On May 26, 2010, which was shortly after the notice of condemnation dated May 4, 2010, but prior to the completion of the State’s final design report on the project, the Zutts commenced an original proceeding in this Court pursuant to, inter alia, section 207 of the Eminent Domain Procedure Law, seeking to temporarily restrain the State’s proposed condemnation during the pendency of the appeal from Zutt III, or alternatively, to permanently enjoin the condemnation. The State moved to dismiss the petition on the ground that jurisdiction does not lie in the Appellate Division pursuant to EDPL 207 where, as here, the State is proceeding to condemn the easement pursuant to an exemption set forth in EDPL 206. In a decision and order dated July 22, 2010, this Court dismissed the proceeding, without prejudice to the Zutts’ commencement of a proceeding pursuant to CPLR article 78 in the Supreme Court, Putnam County (2010 NY Slip Op 77589[U] [2010]).
Meanwhile, on June 15, 2010, prior to dismissal of the original proceeding in this Court, the State completed a final design *93 report on the proposed condemnation. The report indicated that the DOT had considered three alternatives, which were to (1) acquire the proposed permanent easement across the Zutts’ property, (2) divert the stormwater to the north of the Zutts’ property and “acquire an easement across that property,” or (3) remove the closed drainage system along Route 9D and restore it to its pre-1984 condition. Alternative No. 1 was preferred because it was allegedly the least expensive and posed minimal environmental impacts or risk of flooding and accidents on Route 9D. Alternative No. 2 would allegedly cost $754,699 for construction and acquisition of a needed right-of-way, and would potentially increase flooding on Route 9D by overburdening the culvert to the north and have a severe impact on the property of a “historic church.” Alternative No. 3 would allegedly reduce safety on Route 9D, and do nothing to ameliorate the drainage flow across the Zutts’ property. Thus, Alternative Nos. 2 and 3 were “removed from consideration.” The final design report concluded that, pursuant to EDPL 206 (D), the proposed condemnation under Alternative No. 1 was exempt from the public hearing requirement in that the acquisition was purportedly “de minimis,” and the public interest would not be prejudiced by the construction.
With respect to SEQRA, the final design report departed from the initial proposal’s classification of the project as “exempt” from environmental review, finding instead that the project was a Type II action which presumptively does not require the preparation of an EIS because it involved merely the reconstruction of an existing structure or expansion of an existing waterway maintenance site by less than 50%, with no significant effect on the environment. In support of its determination that the project was a Type II action, the DOT stated that the project would not cause more than minor social, economic, or environmental effects upon occupied dwellings, abutting properties or other established human activities, or entail more than minor alteration of, or adverse effect upon, any protected area, including wetlands, prime or unique agricultural land, water resources including streams, or unique ecological natural wooded or scenic areas. The report stated that water had flowed along this course for approximately 80 years in essentially the same manner, and that the current channel would simply be widened and deepened slightly to prevent occasional overflows and erosion damage. Appended to the final design report was an “environmental checklist” form identifying 7 out of 30 enumerated fac *94 tors or areas of concern that would be affected or implicated by this project, specifically parkland and trails, historic and archaeological resources, water quality certification, a stormwater permit, coastal zone management, farmland or an agricultural district, and a scenic byway. The form was left blank under the columns captioned “Further Review Required” and “Comments” next to the seven factors or areas of concern checked.
In July 2010, shortly after the completion of the final design report, the Zutts commenced the instant hybrid proceeding and action in the Supreme Court, Putnam County, seeking to enjoin the condemnation. Several months later, on January 25, 2011, we affirmed Zutt III, holding that the “conclusory assertions” of the State’s expert witness failed to raise a triable issue sufficient to defeat the Zutts’ motion for summary judgment on their cause of action for a permanent injunction against the State (Zutt v State of New York, 80 AD3d 758, 759 [2011]). We further held that the Supreme Court, in directing the State to implement Atkinson’s stormwater diversion plan, had appropriately complied with the duty of an equity court “to go no further than absolutely necessary to protect the rights of the complaining parties” by framing the injunction “as narrowly as possible” (id. [internal quotation marks omitted]).
The Instant Matter
In this hybrid proceeding and action, the Zutts sought, among other things, review of the DOT’s condemnation determination, pursuant to CPLR article 78, and injunctive relief prohibiting the DOT from pursuing the proposed condemnation of their property. Upon the Zutts’ motion, the Supreme Court preliminarily enjoined the DOT from pursuing the condemnation during the pendency of this proceeding and action.
In their petition/complaint, the Zutts alleged that the State refused to comply with the injunction in Zutt III, failed to conduct a public hearing as required by EDPL 201 or any environmental impact review as required by SEQRA, improperly classified the proposed condemnation as de minimis under EDPL 206 and as a Type II action under SEQRA, and had acted in “bad faith” for a “retaliatory” purpose. The Zutts further alleged that, as shown by Appropriations Map No. 36R-1 and the proposed design plan, the taking is not de minimis, in that the State seeks to condemn a 30-foot-wide easement through the heart of their property, requiring the destruction of footbridges, walkways, stone walls, extensive landscaping, the stone-lined *95 ditch they had installed, and at least nine mature trees. Further, the Zutts alleged that the proposed condemnation is palpably unreasonable and entirely unnecessary in light of Zutt III, which directed the State to implement the feasible and cost-effective proposal by engineer Atkinson.
In its answer to the petition/complaint, the State denied that it had acted in bad faith, contending that its assertion of a prescriptive easement was not finally refuted until Zutt I was affirmed on appeal in 2008, no injunction had been issued until Zutt III in 2009, and it had complied with the EDPL and SEQRA. The State contended that any loss to the Zutts was purely economic and compensable with damages and, thus, that the Zutts had not shown a clear right either to a permanent injunction or, to the extent that the petition/complaint could be construed as requesting such relief, to the extraordinary relief of prohibition. Further, the State contended that the proposed condemnation had a rational basis, was not arbitrary and capricious, and was necessary to fulfill a proper public purpose.
In support of its verified answer, the State submitted an affirmation of the DOT attorney responsible for coordinating the investigation, development, and design of the proposed drainage easement, along with exhibits including the initial project proposal and the final design report. Citing the final design report, the DOT attorney averred that the proposed taking was de minimis and properly classified as a Type II action under SEQRA, and that compliance with Zutt III by means of diverting the runoff to the natural stream north of the Zutts’ property would cost $754,699, involve extensive reconstruction, require the creation or purchase of easements across neighboring property, and create a greater risk of flooding along Route 9D because the natural stream did not have sufficient capacity.
In reply, the Zutts and engineer Atkinson submitted affidavits, averring that the State had excluded them from its review process and had incorrectly characterized Alternative No. 2 in the final design report as the equivalent of Atkinson’s proposal. As the Zutts and Atkinson explained it, contrary to the State’s Alternative No. 2, the Atkinson proposal required no additional easements and posed no risk of flooding or involvement of historic church property on the west side of Route 9D. Instead, they explained that, under the Atkinson proposal, the drainage system was to be extended within the State’s existing right-of-way on the eastern side of Route 9D to the northern culvert, and the additional drainage into the natural stream would *96 increase its flow by no more than 1% at peak times. They further contended that the State failed to submit any documentation or expert affidavits in support of the alleged prohibitive cost and unworkability of Alternative No. 2 or the alleged de minimis nature of the proposed condemnation.
In addition, the Zutts and Atkinson averred that the proposed taking was not de minimis, and that the State’s SEQRA determination was based on the faulty premise that the project involved an existing waterway or DOT structure. According to the Zutts and Atkinson, no such structure or waterway exists, and the drainage across the Zutts’ property is a continuing trespass. Moreover, the Zutts and Atkinson explained their understanding that the proposed project failed to meet several of the criteria for Type II actions articulated in the DOT’s regulations at 17 NYCRR 15.14 (d).
Finally, the Zutts contended that, given the history of the underlying dispute, the State’s failure to comply with required procedures under the EDPL and SEQRA and its pursuit of condemnation to avoid the permanent injunction issued by the Supreme Court establish that the State acted in bad faith. They argued that an additional indication of bad faith was the State’s failure to render any SEQRA analysis until after they had commenced the original EDPL proceeding in the Appellate Division, precipitating the generation of the State’s final design report and the incomplete “environmental checklist,” which failed to review the project’s impact on the seven environmental factors identified on the environmental assessment form.
The Order and Judgment of the Supreme Court
In an order and judgment dated September 27, 2010, the Supreme Court held that the proposed condemnation was not de minimis, that the State acted in bad faith and in violation of article 2 of the EDPL, and that the State improperly failed to conduct SEQRA review. The Supreme Court thus, in effect, granted the petition, annulled the determination, and awarded the Zutts summary judgment on the cause of action to permanently enjoin the State from pursuing “any condemnation” of the Zutts’ property. The State appeals.
Analysis
The Public Hearing Requirement of the EDPL
Article 2 of the EDPL, entitled “Determination of the Need and Location of a Public Project Prior to Acquisition,” sets *97 forth the procedure whereby a condemnor acquires private property for an appropriate public purpose. Generally, the condemnor must hold a public hearing pursuant to EDPL 201 through 203, and issue a written determination and findings within 90 days thereafter pursuant to EDPL 204 (see Matter of City of New York [Grand Lafayette Props. LLC], 6 NY3d 540, 546 [2006]). Where this procedure has been followed, an aggrieved property owner may seek judicial review of the determination by commencing an original proceeding in the Appellate Division pursuant to EDPL 207. In such a proceeding, the scope of review is strictly limited by EDPL 207 (C) (see Matter of Aspen Cr. Estates, Ltd. v Town of Brookhaven, 47 AD3d 267, 272 [2007], affd 12 NY3d 735 [2009], cert denied 558 US —, 130 S Ct 96 [2009]).
Here, however, the State invoked a statutory exemption from the public hearing requirement that is applicable “when in the opinion of the condemnor the acquisition is de minimis in nature so that the public interest will not be prejudiced by the construction of the project” (EDPL 206 [D]; see Matter of Rockland County Sewer Dist. No. 1 v J. & J. Dodge, 213 AD2d 409, 412 [1995]). Where a statutory exemption has been invoked, the review procedure of EDPL 207, with its concomitant limitations on the Appellate Division’s scope of review, does not apply; instead, the aggrieved party must commence a proceeding pursuant to CPLR article 78 in the Supreme Court to challenge the State’s assertion of the exemption (see Matter of City of New York [Grand Lafayette Props. LLC], 6 NY3d at 546; Steel Los III, LP v Power Auth. of State of N.Y., 33 AD3d 990, 990-991 [2006]). Thus, with respect to the cause of action seeking review of the DOT’s determination pursuant to CPLR article 78, we consider the merits of that branch of the Zutts’ petition challenging the State’s reliance on the exemption for de minimis acquisitions (EDPL 206 [D]) under the standard of review applicable to proceedings pursuant to CPLR article 78, and consider whether the State’s action “was made in violation of lawful procedure, was affected by an error of law or was arbitrary and capricious or an abuse of discretion” (CPLR 7803 [3]). Under the “arbitrary and capricious” standard, the “determination should not be disturbed unless the record shows that the agency’s action was ‘arbitrary, unreasonable, irrational or indicative of bad faith’ ” (Matter of Halperin v City of New Rochelle, 24 AD3d 768, 770 [2005], quoting Matter of Cowan v Kern, 41 NY2d 591, 599 [1977]).
On this record, we conclude that the State’s determination to invoke the exemption pursuant to EDPL 206 (D) was an *98 abuse of discretion. Initially, the State’s invocation of the exemption cannot be divorced from the lengthy procedural history between these parties. For more than a decade, the State has sidestepped numerous opportunities to negotiate the matter with the Zutts or to ameliorate the trespass. In 2001 the Zutts’ informal request for help from the DOT was denied; in 2002 they filed their first claim in the Court of Claims; in July 2006 Zutt I determined that the discharge of stormwater was a continuing trespass; in November 2006 the State ignored the Zutts’ request for ameliorative measures, and shortly thereafter the Zutts filed an action in the Supreme Court; in 2009 Zutt III permanently enjoined the State from the continuing trespass and directed the implementation of the Atkinson plan; and in 2010 Zutt TV awarded the Zutts damages in connection with yet another claim against the State. Throughout the litigation of the various claims and actions, the State persisted in asserting that it had a prescriptive easement over the Zutts’ property despite the holding in Zutt I explicitly rejecting that argument. In 2009 and 2010, the DOT’S attorneys and engineers engaged in the planning for the proposed condemnation without including the public, the Zutts, or their engineer Atkinson in the process. In so doing, the State contravened the spirit and purpose of EDPL article 2.
The Legislature’s “primary goals” in enacting the procedure for eminent domain proceedings were to provide
“ ‘a uniform and equitable procedure which assures that the public will be adequately informed through hearings of proposed public projects requiring the acquisition of land; that environmental and community impact will be weighed before the acquisition can go forward; and that every effort will be made to negotiate with owners for the acquisition of their property’ ” (Matter of County of Cortland [Miller, 72 AD3d 1436, 1437-1438 [2010], quoting Governor’s Mem approving L 1977, ch 839, 1977 McKinney’s Session Laws of NY at 2529 [emphasis added]).
Against this backdrop we consider the specific contention that the State improperly invoked an exemption to the EDPL. The record clearly does not support the State’s “opinion” that the proposed taking is “de minimis” (EDPL 206 [D]), leading us to conclude that the State’s determination was an abuse of discretion. As revealed in the State’s design plan, the proposed *99 condemnation of a permanent easement involves a substantial portion of the Zutts’ property, covering 15,411 square feet, and cutting a 30-foot swath down the middle of the lot for their single-family home. Within the easement, the State plans to construct a 13-foot-wide, stone-lined drainage ditch, requiring the removal of extensive landscaping, stone walls, walkways, three timber footbridges, and numerous mature trees. The Zutts’ engineer, Atkinson, opined that the proposed drainage ditch would prohibit any expansion of the Zutts’ residence or septic fields, would require the construction of a bridge to traverse from one side of the property to the other, would scar the hillside and be visible from the Hudson River and properties west of the river, and would have a significant impact on the environment with respect to aesthetics, stormwater and sediment control, nearby historic sites, water quality, and recreation. The State failed to submit an expert affidavit to refute Atkinson’s opinion.
Under the totality of the circumstances, the nature of the proposed condemnation is obviously not de minimis, as that term has been interpreted in the context of the exemption pursuant to EDPL 206 (D) (see Matter of County of Cortland [Miller], 72 AD3d at 1439; Matter of Marshall v Town of Pittsford, 105 AD2d 1140, 1140-1141 [1984]; cf. Matter of Rockland County Sewer Dist. No. 1 v J. & J. Dodge, 213 AD2d at 412; Matter of Matteson v County of Herkimer, 94 AD2d 950 [1983]; Matter of American Tel. & Tel. Co. v Salesian Socy., 77 AD2d 706, 707 [1980]). Accordingly, the Supreme Court properly granted that branch of the petition alleging the State’s violation of the EDPL.
Generally, a determination that the condemnor has improperly invoked an exemption to the EDPL would entitle the aggrieved property owner to an order or judgment annulling the determination and/or mandating the condemnor’s compliance with the applicable procedures (see e.g. Matter of Spittler v Town of Hamburg, 4 AD3d 735 [2004]; Matter of Marshall v Town of Pittsford, 105 AD2d at 1141). Under the particular circumstances of this case, however, we conclude, as more fully set forth below, that the State has acted in bad faith, as manifested by a combination of factors, including the unique litigation history of this matter and the State’s violation of the EDPL and SEQRA. Therefore, the Zutts not only are entitled to relief pursuant to CPLR article 78 annulling the instant condemnation determination, they are also entitled to the ultimate relief they seek on their cause of action for a permanent injunction to enjoin the State from pursuing the proposed condemnation.
*100 SEQRA
“SEQRA’s fundamental policy is to inject environmental considerations directly into governmental decision making” (Matter of Coca-Cola Bottling Co. of N.Y. v Board of Estimate of City of N.Y., 72 NY2d 674, 679 [1988]). Since SEQRA contains no provision regarding judicial review, courts apply the standard governing proceedings pursuant to CPLR article 78 for the review of administrative determinations (see Matter of Jackson v New York State Urban Dev. Corp., 67 NY2d 400, 416 [1986]; Matter of Baker v Village of Elmsford, 70 AD3d 181, 187 [2009]). Thus, our authority
“is limited to reviewing whether the determination was made in violation of lawful procedure, was affected by an error of law or was arbitrary and capricious or an abuse of discretion. The relevant question before the court is whether the agency identified the relevant areas of environmental concern, took a hard look at them, and made a reasoned elaboration of the basis for its determination” (Matter of Gernatt Asphalt Prods. v Town of Sardinia, 87 NY2d 668, 688 [1996] [internal quotation marks omitted]; see Matter of Riverkeeper, Inc. v Planning Bd. of Town of Southeast, 9 NY3d 219, 231-232 [2007]; Matter of Jackson v New York State Urban Dev. Corp., 67 NY2d at 417; Matter of Thorne v Village of Millbrook Planning Bd., 83 AD3d 723, 724 [2011]).
Here, the State contends that the proposed project was a Type II action without significant impact on the environment and, thus, presumptively does not require the preparation of an EIS under SEQRA (see 6 NYCRR 617.5 [a]), pursuant to the authority of the DOT to adopt its own list of Type II actions (see 6 NYCRR 617.5 [b]). Regulations promulgated by the DOT enumerate several Type II actions, including “[t]he expansion of an existing highway or waterway maintenance site by less than 50 percent of current size or usage” (17 NYCRR 15.14 [e] [19]), and “replacement reconstruction or rehabilitation, at present sites or immediately adjacent thereto, of existing bridges, culverts or other transportation structures . . . not involving substantial expansion of the structure” (17 NYCRR 15.14 [e] [37] [iv]). The State’s final design report concluded that the proposed project fell within the definition of both of these Type II actions.
On this record, we can find no “reasoned elaboration of the basis for [the State’s] determination” (Matter of Gernatt *101 Asphalt Prods. v Town of Sardinia, 87 NY2d at 688 [internal quotation marks omitted]). The area in question on the Zutts’ property is neither a “waterway maintenance site” nor an “existing . . . culvert[ ]” under the jurisdiction of the DOT (17 NYCRR 15.14 [e] [19], [37] [iv]). The drainage across the Zutts’ property emanates from a culvert under Route 9D, but does not involve the culvert itself. Any improvements to the area of the flow have been made by the Zutts in their attempt to minimize damage caused by the stormwater drainage, a judicially determined continuing trespass. There are no existing structures or waterways lawfully maintained by the DOT on the Zutts’ property. Moreover, even if the subject area could be characterized as a “waterway maintenance site,” the State’s proposed 13-foot-wide ditch constitutes an expansion of more than 50% in surface area over at least part of the existing ditch on the Zutts’ property, which varies in width over its course from 5-to-10 feet wide.
Even if the definitions in the DOT’s regulations are deemed to encompass the project at hand, the DOT failed to satisfy the express proviso in its regulations applicable to each of these Type II actions, which requires the satisfaction of all criteria listed in subdivision (d) of 17 NYCRR 15.14 (see 17 NYCRR 15.14 [e] [19], [37] [iv]). To be classified as a Type II action, the project must involve, inter alia, “no more than minor social, economic or environmental effects upon occupied dwelling units . . . abutting properties or other established human activities”; “no effect on any district, site, building, structure or object that is listed, or may be eligible for listing, on the National Register of Historic Places”; and
“no more than minor alteration of, or adverse effect upon, any property, protected area, or natural or man-made resource of national, State or local significance, including but not limited to . . . prime or unique agricultural land; . . . water resources, including lakes, reservoirs, rivers, streams; . . . designated wild, scenic and recreational rivers; [and] unique ecological, natural wooded or scenic areas” (17 NYCRR 15.14 [d] [3], [6], [7] [iii], [v], [vii], [viii]).
The State failed to take a “hard look” at any of these criteria or to give any “reasoned elaboration of the basis for its determination” that the project, as proposed, will not have a significant impact on these environmental resources.
*102 In fact, the State recognized, early on, the significance of several of these impacts in the “special circumstances” section of the initial project proposal, yet failed to address them at that time, instead declaring the project to be “exempt” from SEQRA without further analysis. Only after the Zutts had commenced an original proceeding in this Court challenging, inter alia, the lack of SEQRA review did the State hastily prepare its final design report with an appended “environmental checklist.” The checklist form is left blank in the areas designated for comment, and it is evident that the DOT undertook no review at all of the project’s impact on the environmental resources, features, and factors identified by its own engineers. Moreover, the Zutts’ engineer opined that the proposed easement would have more than minor environmental effects in connection with several of the criteria listed in 17 NYCRR 15.14 (d), and the State did not refute this opinion with any evidence or expert affidavit of its own.
Accordingly, the record reflects that the State failed to take the requisite “hard look” at whether the project would go beyond the ambit of any of the Type II criteria set forth in 17 NYCRR 15.14 (d), and failed to make any “reasoned elaboration” of the basis for its conclusion that its proposed action was a Type II action under SEQRA (see Matter of Baker v Village of Elmsford, 70 AD3d at 190; Matter of Serdarevic v Town of Goshen, 39 AD3d 552, 554 [2007]).
A petitioner prevailing in a proceeding pursuant to CPLR article 78 challenging a SEQRA determination is entitled to have that determination annulled (see Matter of WEOK Broadcasting Corp. v Planning Bd. of Town of Lloyd, 79 NY2d 373, 383 [1992]; Matter of Baker v Village of Elmsford, 70 AD3d at 190). Here, the Zutts are entitled to relief pursuant to CPLR article 78 annulling the State’s determination that the proposed project is a Type II action and, as more fully set forth below, they are also entitled to the ultimate relief they seek under their cause of action for a permanent injunction to enjoin the State from pursuing the condemnation.
Bad Faith
The concept of bad faith is frequently discussed but rarely, if ever, found to exist in appeals from administrative determinations. We have previously stated that “[i]n the exercise by a body or agency of its condemnation power, the courts may interfere only on a clear showing of bad faith or conduct which is irrational, baseless or palpably unreasonable” (Matter of *103 Dowling Coll. v Flacke, 78 AD2d 551, 552 [1980] [internal quotation marks omitted]). The “clear showing” standard has been repeated in numerous reported decisions involving allegations of bad faith in condemnation proceedings, yet none of these cases has resulted in a finding of bad faith (see Cuglar v Power Auth. of State of N.Y., 3 NY2d 1006 [1957], affg 4 AD2d 801 [1957], affg on op at 4 Misc 2d 879, 895 [1957]; Matter of 49 WB, LLC v Village of Haverstraw, 44 AD3d 226, 239 [2007]; Matter of Stankevich v Town of Southold, 29 AD3d 810, 811 [2006]; Matter of Faith Temple Church v Town of Brighton, 17 AD3d 1072, 1073 [2005]; Greenwich Assoc. v Metropolitan Transp. Auth., 152 AD2d 216, 221 [1989]; Village Auto Body Works v Incorporated Vil. of Westbury, 90 AD2d 502, 502 [1982]; Saso v State of New York, 20 Misc 2d 826, 829 [1959]).
Other cases, while not expressly articulating or applying the “clear showing” standard, have considered allegations of bad faith and found them unsubstantiated by the record (see Matter of Woodfield Equities LLC v Incorporated Vil. of Patchogue, 28 AD3d 488, 490 [2006]; Matter of Rafferty v Town of Colonie, 300 AD2d 719, 721 [2002]; Matter of Ranauro v Town of Owasco, 289 AD2d 1089, 1090 [2001]). The concept of bad faith is also frequently stated in the formulation of the arbitrary and capricious standard governing review of administrative determinations pursuant to CPLR article 78, the standard we apply here with respect to the proceeding portion of this hybrid proceeding/ action (see e.g. Matter of Cowan v Kern, 41 NY2d at 599; Matter of Halperin v City of New Rochelle, 24 AD3d at 770; cf. Matter of Broadway Schenectady Entertainment v County of Schenectady, 288 AD2d 672, 672 [2001] [noting that the formulation “irrational, baseless, palpably unreasonable or made in bad faith” is beyond the statutory scope of review in an original proceeding in the Appellate Division pursuant to EDPL 207 (C)]). What is clear from a review of the cases is that, in any context, the burden on a party alleging bad faith is a “significant hurdle[ ]” to overcome (Matter of 49 WB, LLC v Village of Haverstraw, 44 AD3d at 239).
In eminent domain proceedings, an allegation of bad faith is often one and the same as a contention that the condemnor is acting without an appropriate public purpose or pretextually to benefit a private individual or entity. In such cases, the bad faith allegation must fail where objective data support a legitimate public purpose (see Matter of Kaur v New York State Urban Dev. Corp., 15 NY3d 235, 255 [2010], cert denied sub nom. Tuck- *104 It-Away, Inc. v New York State Urban Dev. Corp., 562 US —, 131 S Ct 822 [2010]). Where the allegations of bad faith and lack of public purpose are separate and distinct, however, we review them independently (see e.g. Salvation Army v Central Islip Fire Dist, 230 AD2d 841 [1996]). We have also noted that allegations of bad faith can be based on conduct irrespective of any challenge to the condemnor’s asserted legitimate public purpose, since “[b]ad faith is a concept separate and distinguishable from pretextual condemnations’’ (Matter of 49 WB, LLC v Village of Haverstraw, 44 AD3d at 239). Such is the case here. The State contends, and the Zutts do not seriously contest, that the State has a valid public purpose for the proposed condemnation, namely, the need to drain stormwater runoff to maintain safety on a public highway. Thus, we review the Zutts’ claim of bad faith by considering circumstances independent of this legitimate public purpose.
Some of the underpinnings of the bad faith allegation here, taken in isolation, have previously been rejected by courts in other contexts. For example, an allegation of bad faith will not be sustained merely because of the “suspicious timing” of a condemnation proceeding (Matter of Woodfield Equities LLC v Incorporated Vil. of Patchogue, 28 AD3d at 490; Matter of Broadway Schenectady Entertainment v County of Schenectady, 288 AD2d at 673). Nor is bad faith shown with “unsupported allegations” that the taking was “for purposes other than those stated” (Matter of Stankevich v Town of Southold, 29 AD3d at 811; see Matter of Rafferty v Town of Colonie, 300 AD2d at 721). The condemnor has broad discretion to decide what land is necessary to fulfill an appropriate public purpose, and a condemnation will not be enjoined merely because an alternate site is available to fulfill that purpose (see Matter of Stankevich v Town of Southold, 29 AD3d at 811; Matter of Gyrodyne Co. of Am., Inc. v State Univ. of N.Y. at Stony Brook, 17 AD3d 675, 676 [2005]; Matter of Neptune Assoc. v Consolidated Edison Co. of N.Y., 125 AD2d 473, 475 [1986]).
However, as a “general principle . . . there is no right to condemn land in excess of the need for public purposes, and ... no more may be taken than is required for the particular public purpose” (Hallock v State of New York, 32 NY2d 599, 605 [1973]; see Matter of Gyrodyne Co. of Am., Inc. v State Univ. of N.Y. at Stony Brook, 17 AD3d at 676). Applying this principle, even in cases involving no bad faith on the part of the condemnor, we have modified determinations of condemnation when *105 the taking is excessive and the specific public purpose may be achieved by a more limited taking (see Matter of Feeney v Town/Village of Harrison, 4 AD3d 428 [2004] [modifying the condemnation to permit an easement rather than title to the property]).
As we have shown, while generally no single consideration might be sufficient to establish a “clear showing” of bad faith, we are faced here with a unique set of circumstances which we deem sufficient to satisfy this weighty burden. On the record presented, the State is not entitled to the usual deference it should be accorded in selecting an appropriate site for a condemnation to fulfill a legitimate public purpose.
In Zutt III, the Supreme Court directed the State to implement the Atkinson stormwater diversion plan. We affirmed that order, upon concluding that the State’s expert witness had offered mere “conclusory assertions” that the Atkinson plan was not feasible (Zutt v State of New York, 80 AD3d at 759). While generally the condemnor has no obligation to explain its preference of one site over another in fulfilling a public purpose (see e.g. Matter of Neptune Assoc. v Consolidated Edison Co. of NY., 125 AD2d at 475), under the extraordinary circumstances presented here, in which the State deliberately ignored a court mandate in making its site selection, it was incumbent upon the State to offer some reasoned basis for its determination. This, it failed to do. In opposition to the petition/complaint, the State proffered only an attorney’s affirmation, making reference to the unsworn design plans prepared by the DOT’s engineers. The State has proffered no evidence or expert affidavit to refute the feasibility, cost-effectiveness, and engineering soundness of the Atkinson plan, which requires no condemnation of any private lands, and poses no adverse environmental impacts. The State’s alleged reasons for its decision not to comply with the court’s directive in Zutt III are based upon a cost analysis with . no factual support and a final design plan which did not even consider the Atkinson plan.
In addition, the State has unreasonably persisted in advancing the theory of prescriptive easement in two litigations subsequent to a determination against it after trial in 2006 that there was no prescriptive easement, and proceeded with planning for the proposed condemnation after Zutt III without involving the public, the Zutts, or Atkinson in the process. The State violated the spirit and letter of the EDPL in making an unfounded determination of a de minimis taking, thereby avoid *106 ing the required public hearing, where the Zutts would have had the opportunity to present evidence of bad faith in a public forum (cf. Matter of Waldo’s, Inc. v Village of Johnson City, 74 NY2d 718, 722 [1989] [having had the opportunity to present evidence of bad faith at a public hearing pursuant to the EDPL, on appeal, the property owner cannot be heard to complain of bad faith]). Moreover, the State failed to conduct any SEQRA review despite the recognition by the DOT’s engineers of potential environmental impacts, hastily prepared a superficial environmental checklist only after faced with new litigation challenging its failure to comply with SEQRA, and proffered a baseless interpretation of its regulations with respect to Type II actions in order to avoid any environmental review.
In sum, we conclude that the Zutts have made a “clear showing” that the State acted in bad faith (cf. Matter of 49 WB, LLC v Village of Haverstraw, 44 AD3d at 239). This showing of bad faith establishes the Zutts’ entitlement to relief pursuant to CPLR article 78 annulling the DOT’s determination. In addition, the showing of bad faith clearly tips the balance of equities in the Zutts’ favor, establishing that element in support of their entitlement to the equitable relief of a permanent injunction (see generally Elow v Svenningsen, 58 AD3d 674, 675 [2009]). We have previously held that the Zutts established all elements of the cause of action for a permanent injunction when we affirmed Zutt III (see Zutt v State of New York, 80 AD3d 758 [2011]). We do so again today.
Scope of Injunctive Relief
The Supreme Court enjoined the State from “pursuing any condemnation” of the Zutts’ property. However, the State sought only to condemn a particular portion of the Zutts’ property for a permanent drainage easement as specifically set forth in its Appropriations Map No. 36R-1. This is the only proposed condemnation under review, and we cannot render an advisory opinion as to any different circumstances which may or may not arise in the future. In keeping with our obligation to go no further than necessary to protect the rights of the petitioners/ plaintiffs, we conclude that the order rendered by the Supreme Court was too broadly stated (see Zutt v State of New York, 80 AD3d at 759; Antinelli v Toner, 74 AD2d 996, 997-998 [1980]). Accordingly, we modify the terms of the injunction imposed by the Supreme Court to prohibit the State from pursuing the proposed condemnation of the drainage easement across the Zutts’ property, as depicted on its Appropriations Map No. 36R-1.
*107 Accordingly, the order and judgment is modified, on the law, by deleting the words, “The respondent is enjoined from pursuing any condemnation of petitioners’ property,” and substituting therefor the words, “The respondent/defendant is permanently enjoined from pursuing condemnation of the drainage easement across the petitioners/plaintiffs’ property, as depicted on its Appropriations Map No. 36R-1,” and, as so modified, the order and judgment is affirmed.
Dickerson, Leventhal and Hall, JJ., concur.
Ordered that the order and judgment is modified, on the law, by deleting the words, “The respondent is enjoined from pursuing any condemnation of petitioners’ property,” and substituting therefor the words, “The respondent/defendant is permanently enjoined from pursuing condemnation of the drainage easement across the petitioners/plaintiffs ’ property, as depicted on its Appropriations Map No. 36R-1”; as so modified, the order and judgment is affirmed, with costs to the petitioners/plaintiffs.