OPINION OF THE COURT
Stein, J.
AER NY-GEN, LLC is a power company licensed by the Federal Energy Regulatory Commission (hereinafter FERC) to *74 operate a hydroelectric facility known as the Swinging Bridge Project (hereinafter the project). The project encompasses three reservoirs, including the Toronto Reservoir (hereinafter the reservoir) located in the Town of Bethel, Sullivan County. As a condition of the FERC license, AER was required to maintain, among other things, a public recreational area on the southeast bank of the reservoir.[1] From 1971 through 2000, access to this recreational area was provided by AER’s predecessor in interest[2] via an easement through property — now owned by respondent Woodstone Lake Development, LLC — that surrounds the reservoir. Woodstone obtained the property in 2000 from Clove Development Corporation, a wholly-owned subsidiary of Orange and Rockland Utilities, Inc. (hereinafter O&R).[3]
Following Woodstone’s acquisition of the property, the public continued to use roads that traversed such property in order to access the recreational area. In the meantime, Woodstone developed the property into an exclusive, private, gated residential community called Chapin Estate. Disputes arose regarding the public’s use of the private roads and, ultimately, Woodstone began blocking the public’s access to the recreational area across its property.
In April 2010, while the issue of the public’s access through Woodstone’s property remained unsettled, AER filed an application to transfer its license to operate the project to petitioners. In November 2010, FERC dismissed the application without prejudice on the ground that AER had not met the requirement of the license that it ensure that the public have access to the recreational area. As a result, AER commenced this EDPL article 4 proceeding seeking to acquire by condemnation a public access easement to the recreational area across the subject roads through Woodstone’s property.[4] Woodstone and respondent Chapin Estate Homeowners Association, Inc. filed separate answers to the petition containing various affirmative defenses, including claims that AER had failed to comply with the public *75 hearing requirement of EDPL 201 and that the petition was untimely. Supreme Court dismissed the affirmative defenses, granted the petition, and directed AER to, among other things, file a bond in the amount of $402,000. Upon respondents’ appeal,[5] we now affirm.
Initially, respondents assert that Supreme Court’s order was based upon an incorrect factual determination that the subject roads located on Woodstone’s property were already burdened by a right of public access and that this finding was contrary to the parties’ agreement that such roads were private. While petitioners agree that the roads were private, it is undisputed that the deed by which O&R transferred the property to Clove in 1971 specifically reserved to O&R the right to enter and use certain private roads for “any purpose, including without limitation the right to unrestricted travel along said roads with any vehicle, equipment or machinery.”[6] Clove’s conveyance of the property to Woodstone in 2000 recognized that easement.[7] It is also undisputed that, for decades, the public enjoyed access to the recreational area at the reservoir through the property now owned by Woodstone until Woodstone permanently blocked such access in 2005. Simply put, Supreme Court’s decision properly reflected the existence of the reserved easement, as well as the public’s prior access to the reservoir by use of the roads across Woodstone’s property.
We turn next to the merits of respondents’ challenge to Supreme Court’s conclusion that AER was not required to conduct a public hearing pursuant to EDPL 201. In that regard, the EDPL prescribes a two-step process for the condemnor to obtain title. The first step requires compliance with the procedures set forth in EDPL article 2 which, among other things, calls for a condemnor to determine whether condemnation is required by either conducting a hearing or by following an alternate procedure under EDPL 206 (see Matter of City of *76 New York [Grand Lafayette Props. LLC], 6 NY3d 540, 543 [2006]). Thereafter, the condemnor must seek acquisition of the property by commencing a vesting proceeding pursuant to EDPL article 4 (see id.).
“The principal purpose of EDPL article 2 is to insure that [a condemnor] does not acquire property without having made a reasoned determination that the condemnation will serve a valid public purpose” (Matter of 265 Penn Realty Corp. v City of New York, 99 AD3d 1014, 1014 [2012] [citations omitted]). Thus, the function of a preacquisition public hearing is “to inform the public and to review the public use to be served by a proposed public project and the impact on the environment and residents of the locality where such project will be constructed” (EDPL 201). Following the public hearing, the condemnor is required to make written determinations with respect to, among other things, “the public use, benefit or purpose to be served by the proposed public project” (EDPL 204 [B] [l]).[8]
However, there are five exemptions that allow a condemnor to dispense with the hearing requirement of EDPL article 2 (see EDPL 206; City of Buffalo Urban Renewal Agency v Moreton, 100 AD2d 20, 23 [1984]). Here, AER claimed that three of these exemptions applied (see EDPL 206 [A], [C], [D]). As the condemnor, AER bore the burden of demonstrating that it was entitled to an exemption (see Matter of Sanitation Garage Brooklyn Dists. 3 & 3A, 32 AD3d 1031, 1034 [2006], lv denied 7 NY3d 921 [2006]). Supreme Court found such entitlement pursuant to EDPL 206 (A). As relevant here, that section provides that a hearing is not required when, in relation to a federal law or regulation, a condemnor considers factors similar to those set forth in EDPL 204 (B) and obtains a license or “similar approval” from a federal agency or commission before proceeding with the acquisition (see Matter of National Fuel Gas Supply Corp. v Town of Concord, 299 AD2d 898, 899 [2002]).
Here, both AER and FERC clearly considered factors that are similar to those contained in EDPL 204 (B), with the primary consideration being the public’s use and the benefit to be served by public access to the recreational area. In its November 2010 order dismissing AER’s application to transfer the project’s *77 license to petitioners, FERC specifically noted that AER was required to “obtain the property rights (e.g., easement or fee title) necessary to ensure public access to the recreation[al] area regardless of the operational aspects of the project” and concluded that “[i]t would not be in the public interest to allow [AER] to divest itself of the [project] until it has resolved the access issue by obtaining the necessary property rights.”[9] Moreover, AER was reminded that FERC “would not allow the interests of private landowners to override the general public’s right to enjoy the recreational resources associated with hydropower projects.” At that time, FERC had been fully apprised of the issues surrounding the public access to the recreational area and Woodstone’s refusal to allow the public to use its private roads. FERC was also aware of the then-pending litigation between private citizens, Woodstone and AER regarding the public’s access across Woodstone’s property (see Barrett v Watkins, 82 AD3d 1569 [2011], 52 AD3d 1000 [2008])[10] and that AER intended to initiate condemnation proceedings, if necessary, to obtain the public access easement. In our view, FERC’s November 2010 order constituted not only an approval by FERC of AER’s condemnation of the property to establish a public access easement, but articulated that acquisition of the easement was a prerequisite to the continuation of its license to operate the project.
With respect to AER’s consideration of the appropriate location of the public access easement, we note that the easement was placed along the route that had, at one time, been proposed by Woodstone. While Woodstone now objects to the public’s use of any route through its property, it does not contend that the easement should have been placed along an alternate route on the property.* [11] Under these circumstances, the purpose of conducting a public hearing — to determine whether the public interest will be served by the proposed acquisition — has been fulfilled and factors consistent with EDPL 204 (B) have been *78 properly considered. Therefore, we agree with Supreme Court’s determination that AER was entitled to an exemption pursuant to EDPL 206 (A).
We also agree with AER that the de minimis exemption to the public hearing requirement applies. EDPL 206 (D) provides, as relevant here, that a public hearing is not required “when in the opinion of the condemnor the acquisition is de minimis in nature so that the public interest will not be prejudiced by the construction of the project.”[12] While “[t]he fact that the amount of land is not substantial does not necessarily render a taking de minimis” (Matter of County of Cortland [Miller], 72 AD3d 1436, 1439 [2010]), we note that the acquisition sought here is limited to an easement that allows the public to use an existing roadway to gain access to a relatively small recreational area and does not otherwise “interfere with current land use” (Matter of Rockland County Sewer Dist. No. 1 v J. & J. Dodge, 213 AD2d 409, 412 [1995] [internal quotation marks and citation omitted]; see Matter of Town of Coxsackie v Dernier, 105 AD2d 966, 967 [1984]). Moreover, the acquisition merely restores public access over roads through property that was already encumbered by an easement that had been reserved to AER. It does not involve the removal of any structures, trees or bushes or otherwise require a structural change to the existing roads (see Matter of Matteson v County of Herkimer, 94 AD2d 950, 950 [1983]; compare Matter of Zutt v State of New York, 99 AD3d 85, 99 [2012]; Matter of Marshall v Town of Pittsford, 105 AD2d 1140, 1140-1141 [1984], lv denied 64 NY2d 606 [1985]). Respondents’ claim that the public access easement will have a significant impact on the value of its property has clearly been considered. In our view, such claim — which is, indeed, a proper subject of an EDPL article 5 proceeding to determine respondents’ rights to compensation — does not preclude a finding that the acquisition is de minimis for the purposes of the hearing provisions of EDPL article 2.
Supreme Court correctly determined that the proceeding was timely commenced. As pertinent here, condemnation proceedings must be commenced within three years of the “completion of the procedure that constitutes the basis of [the] exemption under [EDPL 206]” (EDPL 401 [A] [2]; see Matter of Central Hudson Gas & Elec. Corp. [Berger], 274 AD2d 860, 861-862 [2000]). We reject respondents’ assertion that the time to *79 commence this proceeding began to run when FERC initially approved the project’s license in 1992 and conclude that the procedures constituting the basis of the exemption claimed under EDPL 206 occurred in November 2010, when FERC denied the license transfer and when AER subsequently determined that the acquisition of the public access easement was de minimis. Inasmuch as AER commenced this proceeding in December 2010, it was timely.
Respondents also argue that AER was required to provide notice of the EDPL article 4 proceeding to property owners within the subdivision whose property did not abut the roads over which the public access easement would lie. Assuming that respondents may assert a due process claim on behalf of those owners (cf. Matter of Czajka v Koweek, 100 AD3d 1136, 1138 [2012], lv denied 20 NY3d 857 [2013]; Matter of Kelly v New York State Ethics Commn., 229 AD2d 848, 849 [1996]), we are unpersuaded. In addition to serving the petition upon the record owners of the property abutting the roads subjected to the easement (see EDPL 402 [B] [2]), AER complied with the statutory notice requirements by publishing notice of the proceeding in a newspaper with general circulation and posting notice in various locations along the easement route (see EDPL 402 [B] [2] [a], [b]).[13] Under these circumstances, we reject Woodstone’s due process claim.
Finally, we discern no basis to disturb the exercise of Supreme Court’s discretion in fixing the undertaking (see Matter of City of Syracuse Indus. Dev. Agency [J.C. Penney Corp., Inc. — Carousel Ctr. Co., L.P.], 32 AD3d 1332, 1334 [2006], lv denied 7 NY3d 714 [2006], cert denied 550 US 918 [2007]; Ujueta v Euro-Quest Corp., 29 AD3d 895, 896 [2006]). After Supreme Court considered the widely divergent expert valuations submitted by the parties[14] and conducted a visual inspection of the subject easement, it rejected the opinion of respon *80 dents’ expert as being speculative, particularly because it was based on the assumption that Woodstone’s title to the property on which the easement ran was “free of any encumbrances and/or defects or liens,” an assumption for which there was no evidentiary support. Considering that the amount of the undertaking is distinct from the condemnee’s ultimate compensation (see EDPL art 5), we are satisfied that Supreme Court did not improvidently exercise its discretion in fixing the amount of the undertaking and sufficiently detailed the facts and explained the reasons for its determination.
Respondents’ remaining contentions have been considered and found to be without merit.
Peters, P.J., Rose and Egan Jr., JJ., concur.
Ordered that the order is affirmed, with costs.

. The area at issue here presently consists of a 15-car parking area and boat launch.

. Orange and Rockland Utilities, Inc. held the original license that FERC issued on the project in 1992 and transferred it to Southern Energy NY-GEN, LLC in June 1999. Southern Energy changed its name to Mirant NY-GEN, LLC in 2004, which changed its name to AER in 2007.

. O&R transferred the property to Clove in 1971.

. We note that AER’s authority to commence this condemnation proceeding derives from its status as a licensee under the Federal Power Act (see 16 USC § 814).

. After Supreme Court granted the petition and during the pendency of this appeal, FERC granted AER’s application to transfer the project license to petitioners, who were then substituted for AER herein.

. This deed was also made “[subject] to any and all existing privileges given by [O&R] to any person or agency, public or private, to enter upon any portion of the premises herein conveyed for the purpose of hunting, fishing and any other recreational activity.”

. In addition, a deed that transferred one lot abutting the public recreational area from Woodstone to Marc Bushell and Karen Bushell expressly recognized that the transfer was subject to “easements of record” and “the rights of the public over Toronto Dam Road and Top Ridge Trail.”

. Other relevant factors to be considered pursuant to EDPL 204 (B) include “the approximate location [of] the proposed public project and the reasons for the selection of that location,” “the general effect of the proposed project on the environment and residents of the locality” and “such other factors as [the condemnor] considers relevant.”

. We note that, when FERC initially issued the license, the property surrounding the project was undeveloped and Woodstone took ownership of such property with knowledge of the public’s use of certain roads across the property to access the recreational area.

. Contrary to respondents’ contention, we find nothing in our decisions relative to the Barrett v Watkins litigation that prevents a resolution of the issues raised in the context of this proceeding.

. Additionally, Woodstone made various representations to the Town of Bethel, in connection with its development of the property, that it would allow public access along such route.

. EDPL does not define what constitutes a “de minimis” acquisition (see EDPL 103).

. AER also filed a notice of pendency, notice of petition and petition with the Sullivan County Clerk (see EDPL 402 [B] [1]). Although Supreme Court noted that Woodstone owned almost all of the nonabutting lots and had mailed copies of the petition to all of the other nonabutting owners in Chapin Estate, the court also directed — as an extra measure — that AER mail notice of the petition and a copy of the condemnation order to such owners as identified by Woodstone.

. AER’s expert ultimately determined the value of the impact of the public access easement to be $402,000, while respondents’ expert opined that the diminution in the value of the affected property would be at least $30 million.